UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MATTHEW KELSEY MARTINEAU, | CIVIL ACTION NO.  2:24-cv-02387 |
| Plaintiff, | |
| | JUDGE SUSIE MORGAN |
| v. | |
| BUNGIE, INC., a Delaware corporation; DOES 1-10, inclusive, | MAGISTRATE JUDGE MICHAEL B. NORTH |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO BUNGIE, INC.'S  MOTION TO DISMISS**

Respectfully submitted:

 s/Ted M. Anthony
Ted M. Anthony (La. Bar Roll No. 21446)  (T.A.)
BABINEAUX, POCHÉ, ANTHONY
    & SLAVICH, L.L.C.
P. O. Box 52169
Lafayette, LA  70505-2169
Telephone:  (337) 984-2505
Facsimile:  (337) 984-2503
Email:  tanthony@bpasfirm.com

AND

BARRY ROME & SCOTT
STEPHEN R. BARRY (La. Bar Roll No. 21465)
A Professional Law Corporation
405 West Main Street, Suite 101
Lafayette, La 70501
Telephone:  (337) 237-2889
Facsimile:  (337) 237-2878
Email: sbarry@barryrome.com

ATTORNEYS FOR  PLAINTIFF
MATTHEW KELSEY MARTINEAU

## TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ..................................................................................................1

II.   FACTUAL BACKGROUND ..............................................................................2

III.  LEGAL STANDARD ..........................................................................................4

IV.   LAW AND ARGUMENT .....................................................................................5

    A. Bungie's Motion to Dismiss Must Fail Because this Court Has Already Held that the Side-by-Side Comparison of the Works is Improper as this Stage of the Proceedings ..........................................................................................................5

    B. Martineau's Amended Complaint Clearly and Unambiguously Alleges a Plausible Claim for Copyright Infringement ...............................................................7

        1. Ownership of a valid copyright.................................................................8

        2. Factual copying ........................................................................................8

            i)     Direct Copying................................................................................8

            ii)    Circumstantial Evidence of Copying .............................................9

            iii)   Allegations of Striking Similarity ................................................14

        3. Substantial Similarity.............................................................................14

    C. Bungie's Motion to Dismiss Must Be Denied Because It Is Not Based Upon a Direct Comparison of the Actual Works at Issue.......................................19

    D. Martineau's Work is Entitled to Copyright Protection .................................20

        1. Literary Works........................................................................................21

        2. *Scenes-a-faire* and Characters.............................................................22

        3. Originality and Idea v. Expression Dichotomy.......................................23

V.    CONCLUSION...................................................................................................26

i

# TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*Armour v. Knowles,*
    512 F.3d 147, 152 (5th Cir. 2007) .................................................................8, 9

*Ashcroft v. Iqbal,*
    556 U.S. 662, 678-679 (2009) .......................................................................4, 5

*Bach v. Forever Living Prods., U.S., Inc.,*
    473 F. Supp.2d 1127 (W.D. Wash. 2007)...........................................................23

*Batiste v. Lewis,*
    2018 WL 2268173 *4 (E.D. La. May 17, 2018)..............................3, 5, 6, 7, 14, 19, 20, 22

*Batiste v. Najm,*
    28 F.Supp3d 595, 624-625 (E.D.La. 2014).......................................................6, 21, 22, 23

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 554, 555-56 (2007) .............................................................................4

*Doe ex rel. Magee v. Covington Cnty. Sch. Dist. Ex rel. Keys,*
    675 F.3d 849, 854 (5th Cir. 2012) ...............................................................4, 5, 7

*Eng'g Dynamics, Inc. v Structural Software, Inc.,*
    26 F.3d 1335, 1343 (5th Cir. 1994) .............................................................15, 21, 22

*Feist Publications v. Rural Tel. Service,*
    499 U.S. 340, 358 (1991)...............................................................................24

*Flowserve Corp. v. Hallmark Pump Co.,*
    2011 WL 1527951 at *5 (S.D. Tex. Apr. 20, 2011) ...........................................10

*Gen. Universal Sys., Inc. v. Lee,*
    379 F.3d 131, 142 (5th Cir. 2004) .............................................................8, 12, 14, 19

*Gonzalez v. Kay,*
    577 F.3d 600, 603 (5th Cir. 2009) .....................................................................4

*Google LLC v. Oracle Am., Inc.,*
    593 U.S. 1, 20 (2021).....................................................................................25

*Hanagami v. Epic Games, Inc.,*
    85 F.4th 931, 945-946 (9th Cir. 2023) .................................................................6

*Harold Lloyd Corp. v. Witwer,*
　　65 F.2d 1, 18 (9th Cir. 1933) ...................................................................14

*Interplan Architects, Inc. v. C.L. Thomas, Inc.,*
　　No. 4:08-CV-03181, 2010 WL 4065465 * 13 (S.D. Tex. Oct. 9, 2010...........................25

*Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.,*
　　677 F.2d 1045, 1050 (5th Cir. 1982) .......................................................4

*Kepner-Tregoe, Inc. v. Leadership Software, Inc.,*
　　12 F.3d 527, 533 (5th Cir. 1994) ...........................................................7

*Latele Television, C.A. v. Telemundo Commc'ns Grp., LLC,*
　　No. 12-22539-CIV, 2015 WL 427817 * 18-20 (S.D. Fla. Feb. 2, 2015)....................22, 24

*Lennar Homes of Texas Sales & Mktg., Ltd. v. Perry Homes, LLC,*
　　117 F.Supp.3d 913, 933 (S.D. Tex. 2015) .............................................12

*Lowrey v. Tex. A & M Univ. Sys.,*
　　117 F.3d 242, 247 (5th Cir. 1997) ..........................................................4

*Mallon v. Marshall,*
　　95 F.Supp.3d 274, 276 (D. Mass. 2015) ...............................................6

*McLin v. Ard,*
　　866 F.3d 682, 688 (5th Cir. 2017) .........................................................11

*Peel & Co. v. The Rug Mkt.,*
　　238 F.3d 391, 397-398 (5th Cir. 2001) ............................................12, 14

*Positive Black Talk, Inc. v. Cash Money Records, Inc.,*
　　394 F.3d 357, 367 (5th Cir. 2004) ......................................................8, 12

*Reed Elsevier, Inc. v. Muchnick,*
　　559 U.S. 154 (2010).............................................................................9

*Stadium Chair Co., LLC v. Costco Wholesale Corp.,*
　　No. SA-14-CV-00630-OLG, 2014 WL 12493283 (W.D. Tex. Dec. 17, 2014) ...............25

*Vallery v. American Girl Dolls,*
　　Civ. No. 13-5066, 2015 WL 1539243, *3 (E.D. La. Apr. 6, 2015)...................19

**Statutes**                                                                      **Page(s)**

17 U.S.C.A. § 101...............................................................................................21, 25

17 U.S.C.A. § 102(a) ........................................................................................21, 25

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)...........................................................................1, 2, 4, 5, 6, 7, 20, 26

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

MATTHEW KELSEY MARTINEAU,

Plaintiff,

v.

BUNGIE, INC., a Delaware
corporation; DOES 1-10, inclusive,

Defendants.

CIVIL ACTION NO.   2:24-cv-02387

JUDGE SUSIE MORGAN

MAGISTRATE JUDGE
MICHAEL B. NORTH

## PLAINTIFF'S MEMORANDUM IN OPPOSITION
## TO BUNGIE, INC.'S  MOTION TO DISMISS

Plaintiff, Matthew Kelsey Martineau ("Martineau"), hereby submits this Memorandum in

Opposition to the Motion to Dismiss[1] filed by Defendant, Bungie, Inc. ("Bungie").

## I.    INTRODUCTION

This Court has already denied Bungie's original Rule 12(b)(6) Motion to Dismiss.

Despite Plaintiff filing a 56-page Amended Complaint replete with numerous examples of detailed

similarities between Martineau's source work and Bungie's infringing Destiny 2, Bungie now files

yet another motion to dismiss.    Although styled as a Rule 12(b)(6) motion, Bungie's latest filing

is nothing more than a premature motion for summary judgment premised upon supporting

evidence that is clearly outside the scope of Plaintiff's Amended Complaint.    Bungie is seeking

to decide the case on the merits via "trial by affidavit".    However, such a motion is improper at

this stage of the proceedings because there are clearly disputed issues of material fact, and the

parties have not even had an opportunity to engage in any discovery.

---

[1]        Rec. Doc. 26.0.

1

Defendant Bungie's Motion to Dismiss must be denied because it improperly seeks to have this Court look beyond the allegations of Martineau's Amended Complaint. Martineau's work is clearly entitled to copyright protection, and his Amended Complaint clearly and unambiguously asserts a cause of action for copyright infringement against Bungie. Furthermore, this Court cannot engage in the side-by-side comparison required by Bungie's Motion to Dismiss because Bungie has failed to provide a true and complete copy of the actual infringing work.

## II.        FACTUAL BACKGROUND

In 2013 and 2014, Martineau authored an original science fiction-based work about a unique and captivating fantasy world. Martineau published his work on the World Wide Web; the work was published at www.WordPress.com ("WordPress") a well-known and popular searchable online publishing platform freely accessible to anyone worldwide via the internet. Martineau's imaginative work is set in multiple locations including on Earth (Blue Opposed planet), as well as other planets, and details the exploits of the notorious Red Legion, a powerful military force. The Red Legion is embroiled in an unending cycle of warfare throughout these locations including the Land of the Crimson Sky, a territory seized and occupied by the Red Legion.

Martineau's 56-page Amended Complaint includes allegations that Bungie's sprawling video game "Destiny 2" was directly copied from Martineau's work. Martineau's Amended Complaint contains 241 separate numbered paragraphs asserting thorough and detailed allegations that lay out a broad-based cause of action against Bungie for copyright infringement. In response, Bungie has filed another Motion to Dismiss Martineau's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), arguing that a detailed comparison of works at issue reflects that the works have a number of substantive differences and that Martineau's work is not entitled to copyright

protection.

Bungie's motion to dismiss is fundamentally flawed for a number of reasons.   First, Bungie's motion improperly requests the Court to assume the role of a factfinder by conducting a detailed comparison of the two works at issue in this lawsuit.  Additionally, Bungie's motion is actually a premature motion for summary judgment that relies upon evidence outside the scope of Martineau's pleading, despite the fact that this Court has previously and unambiguously held that such an analysis is clearly improper at this stage of the proceedings.[2]   The ***only*** issue that is properly before the Court is whether the allegations of Martineau's Amended Complaint – which must be taken as true and without reference to any other evidence outside of the scope of Martineau's pleading – states a plausible claim for copyright infringement, which it clearly does.

Further, Bungie's Motion to Dismiss is also fatally flawed because it lacks the relevant evidence required for the Court to perform a side-by-side analysis — specifically, the entire infringing work itself.  To the extent that the Court believes Martineau incorporated by reference any works, it should be clear that any such reference was limited solely to the works that are central to his claim — his copyrighted work and the infringing work itself (Destiny 2).   In no way has Martineau incorporated by reference sworn declarations of Bungie representatives or incomplete derivative works created by random third parties.

Contemporaneously with this Opposition, Martineau has also filed a Motion to Strike the materials attached to Bungie's Motion to Dismiss.[3]  For the reasons set forth in the subject Motion to Strike, this Court must not consider the improper evidence attached to Bungie's motion.   The third-party content attached to Defendant's Motion to Dismiss is not referenced in Plaintiff's

---

[2]     *Batiste v. Lewis*, 2018 WL 2268173 *4 (E.D. La. May 17, 2018).

[3]     Motion to Strike (Rec. Doc. 29.0).

Amended Complaint and, further, is not an accurate representation of the complete infringing Destiny 2 work.   Because Bungie has failed to provide the complete and infringing work, the Court cannot grant Defendant's Motion to Dismiss.

Notwithstanding the foregoing, although such a side-by-side comparison is clearly improper in connection with Bungie's motion, Plaintiff Martineau nonetheless addresses numerous and extensive similarities between Martineau's work and the infringing work Destiny 2, similarities that are both striking and substantial.

## III.    LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) is only appropriate if the Plaintiff has failed to sufficiently state a claim and present factual allegations that, accepted as true, are reasonable and go beyond mere speculation.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555-56 (2007).  Such motions are viewed with disfavor and rarely granted. *See Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997) (quoting *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982)). In considering a Rule 12(b)(6) motion, the Court "accept[s] all well-pleaded facts as true and view[s] all facts in the light most favorable to the plaintiff." *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Key*s, 675 F.3d 849, 854 (5th Cir. 2012).

In order to survive dismissal pursuant to a Rule 12(b)(6) motion, a plaintiff's complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *See Iqbal*, 556 U.S. at 678; *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). "Factual allegations must be enough to raise a right to relief above the speculative level…on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555.  "A claim has facial plausibility when a plaintiff pleads factual content that allows

a reviewing court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Iqbal*, 556 U.S. at 678.   Importantly, the court must "determine whether the plaintiff stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." (emphasis added) *Doe ex rel. Magee*, 675 F.3d 849 at 854.

## IV.    LAW AND ARGUMENT

A.    Bungie's Motion to Dismiss Must Fail Because this Court Has Already Held that the Side-by-Side Comparison of the Works is Improper at this Stage of the Proceedings

In its Rule 12(b)(6) motion, Bungie improperly invites the Court to perform a detailed substantive comparison of the works at issue.  However, in *Batiste v. Lewis*, this Court squarely rejected performing such an analysis in connection with a Rule 12(b)(6) motion to dismiss a copyright infringement action.[4]  At the motion to dismiss stage, the Court must determine only "whether [plaintiff]'s complaint, taken as true, plausibly alleges the three requirements to a successful claim [for copyright infringement]."  *Id.* at *3. Put another way, the detailed side-by-side comparison advanced by Bungie is clearly improper for a Rule 12(b)(6) motion.

In *Batiste v. Lewis*, a New Orleans jazz musician accused an internationally famous hip-hop duo of copyright infringement of multiple different original songs. *Id.* at *1. The defendants filed a Rule 12(b)(6) motion to dismiss, citing an expert's comparison of the plaintiff's original works and the defendants' allegedly-infringing works. *Id.* at *2. This court flatly refused to engage in such an analysis, explaining:

> The defendants ask the Court to engage in a side-by-side analysis, comparing the musical elements of Batiste's works to the defendants' songs to determine whether Batiste has stated a claim. The Court declines. At the pleading stage, the Court is limited to the facts alleged

---

[4]     *Batiste*, 2018 WL 2268173 at * 4; Bungie's motion cites several cases resolved at later stages of litigation well after the Rule 12(b)(6) phase.  However, as with its original Motion to Dismiss,  Bungie latest motion completely omits *Batiste v. Lewis*, a decision by this Court that directly addresses issues in this case.  This omission is notable and speaks volumes considering *Batiste*'s relevance, applicability, and connection to this Court.

in the complaint; ***it is not acting as a factfinder***. ***A decision on the merits based on the Court's judgment of the similarity of the songs is inappropriate at this stage of the proceedings***. Batiste meets his burden to allege copyright infringement. (emphasis added)

*Batiste v. Lewis*, 2018 WL 2268173, at *4.

Numerous other courts have also properly refused to engage in detailed fact-finding exercises when deciding Rule 12(b)(6) motions to dismiss in copyright actions.   For example, in *Hanagami v. Epic Games, Inc.*, a celebrity choreographer filed a lawsuit alleging that a popular video game (Fortnite) infringed his copyrighted five-minute choreographic work. *Hanagami v. Epic Games, Inc.*, 85 F.4th 931, 945-946 (9th Cir. 2023). In Fortnite, players could customize avatars with "emotes," which are virtual animations. *Id.* at 935. The plaintiff claimed that one emote copied a section of his choreographic work. *Id.* The defendant sought to dismiss the case under Rule 12(b)(6), arguing the dance steps were not protectable and lacked substantial similarity. *Id.* at 938. Although the district court agreed with the defendant, the appellate court reversed the decision, stating that the defendant's motion raised fact questions inappropriate for resolution at the dismissal stage. *Id.* at 947.

Similarly, in *Mallon v. Marshall*, a research associate filed a lawsuit against certain scientists alleging that he should have been listed as a co-author of scientific research paper under the Copyright Act. *Mallon v. Marshall*, 95 F. Supp. 3d 274, 276 (D. Mass. 2015). The defendant scientists had submitted the research paper to a scientific journal, and it was published without listing the plaintiff as a co-author. *Id.*  The court ruled that determining the paper's copyrightability couldn't be resolved at the pleading stage due to existing factual disputes. *Id.* at 278.

In *Batiste v. Najm*, a musician brought an action for copyright infringement against certain record companies, alleging infringement of forty-five (45) separate songs authored by the plaintiff. *Batiste v. Najm*, 28 F. Supp. 3d 595, 597-98 (E.D. La. 2014). The defendants filed a motion to

dismiss, but this Court converted the defendant's motion to a motion for summary judgment. *Id.* at 598. Further, although this Court performed a detailed side-by-side comparison of the works, such an analysis was performed ***only after*** the parties had an opportunity to conduct discovery and provide the court with relevant expert testimony. *Id.*

In the present case, a detailed side-by-side comparison between Martineau's work and Bungie's infringing work is clearly not appropriate at this stage of the proceedings. *Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 533 (5th Cir. 1994) ("These copyright issues of *access* and *substantial similarity* are **findings of fact** and are consequently reviewed under the clearly erroneous standard."). Further, as explained by this Court in *Batiste v. Lewis,* at "the pleading stage, the Court is limited to the facts alleged in the complaint; ***it is not acting as a factfinder*.**   The Court must "determine whether the plaintiff stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." (emphasis added) *Doe ex rel. Magee*, 675 F.3d 849 at 854.

The sole issue presented by Bungie's Rule 12(b)(6) motion is whether the allegations of Martineau's Amended Complaint – taken as true and with no reference to facts or evidence outside of the pleading – have stated a plausible claim for copyright infringement.  For the reasons set forth below, Martineau's Amended Complaint clearly and overwhelmingly alleges such a viable cause of action for copyright infringement.   Accordingly, Defendant's Motion to Dismiss must be denied.

    B.  <u>Martineau's Amended Complaint Clearly and Unambiguously Alleges a Plausible Claim for Copyright Infringement</u>

At the motion to dismiss stage, the Court must determine only "whether [plaintiff]'s complaint, taken as true, plausibly alleges the three requirements to a successful claim [for copyright infringement]." *See Batiste,* 2018 WL 2268173 at *3.   In order to prove copyright

infringement, a plaintiff must establish (1) ownership of a valid copyright; (2) factual copying; and (3) substantial similarity. *Armour v. Knowles*, 512 F.3d 147, 152 (5th Cir. 2007); *Positive Black Talk, Inc. v. Cash Money Records, Inc*., 394 F.3d 357, 367 (5th Cir.2004), abrogated on other grounds by *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010)).

The second element, factual copying, "can be proved by direct or circumstantial evidence. To make out a circumstantial claim, a plaintiff must prove that (1) the defendant had access to the copyrighted work before creation of the infringing work and (2) the works contain similarities that are probative of copying." *Armour v. Knowles*, 512 F.3d at 152 (5th Cir. 2007). The second element can also be established without demonstrating access if the two works exhibit such striking similarities that they preclude the possibility of independent creation. *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 142 (5th Cir. 2004). The third element inquiry into substantial similarity evaluates whether the factual copying is sufficient to deem the appropriation "legally actionable." *Positive Black Talk, Inc.,* 394 F.3d at 370.

### 1. *Ownership of a valid copyright*

Martineau's Amended Complaint expressly addresses ownership of a valid copyright in multiple allegations.[5] Defendant does not challenge these allegations, which must be accepted as true for purposes of this motion. Accordingly, the element of ownership is clearly supported by the allegations of Martineau's Amended Complaint in this case.

### 2. *Factual copying*

i)    Direct Copying

In the present case, Martineau's Amended Complaint includes multiple allegations

---

[5]    Plaintiff has compiled relevant allegations from his Amended Complaint (Rec. Doc. 24) in the attached Exhibit "A", which is provided for the Court's convenience and ready reference.  See, Exhibit A, ¶¶13 and 222; Rec. Doc. 24, ¶¶13 and 222.

expressly asserting that Bungie directly copied his work.[6] Bungie's motion completely ignores these allegations wherein Martineau expressly and unambiguously alleges that Bungie directly copied Martineau's source work. Martineau's Amended Complaint clearly alleges direct copying by Bungie, and these allegations must be accepted as true for purposes of this motion. Bungie's footnoted assertion that Plaintiff's allegations of direct copying lack the evidentiary weight needed to establish factual copying are unfounded; at the motion to dismiss stage, the focus is not on the evidence but on the legal sufficiency of the Complaint. *Reed v. Sw. Corr. Med. Grp., PLLC,* No. 7:21-CV-126-O, 2023 WL 11829982 *2 (N.D. Tex. Mar. 31, 2023) (the Court's role is to determine whether the complaint itself is legally sufficient, not to weigh evidence that might be presented at trial). Accordingly, the element of factual copying is clearly satisfied by Martineau's allegations of direct copying.

       ii)   <u>Circumstantial Evidence of Copying</u>

Notwithstanding the foregoing, Martineau's Amended Complaint also includes allegations regarding circumstantial evidence of factual copying.[7] In order to establish a circumstantial case of factual copying, "the combined existence of access to the copyrighted work and similarities between the two works establishes the assumption as a matter of law that copying in fact occurred." *Armour*, 512 F.3d at 152. Bungie's motion wrongly characterizes the allegations of access as speculative, when in fact, *Bungie's creative director, of both Destiny and Destiny 2, is on video describes Bungie's creative process as taking ideas from various online third-party works, including films, art, and other online media.[8]* This "creative process" also involved a large team

---

[6]      Exhibit A, ¶¶83, 67, 125, 134, 138, 130, 146, 223, 167 and 177; Rec. Doc. 24, ¶¶83, 67, 125, 134, 138, 130, 146, 223, 167 and 177.

[7]      Exhibit A, ¶¶14-16, 39-51, 55-63 and 65-67; Rec. Doc. 24, ¶¶14-16, 39-51, 55-63 and 65-67.

[8]      Exhibit A, ¶55; Rec. Doc. 24, ¶55.

of up to 400 members actively searching  online sources for inspiration.[9]

Furthermore, contrary to Bungie's assertion, access can be demonstrated by making copyrighted work publicly available online for others to view. *See Flowserve Corp. v. Hallmark Pump Co.*, 2011 WL 1527951 at *5 (S.D. Tex. Apr. 20, 2011) (The defendant undoubtedly had access to the copyrighted work, as it was available on the defendant's publicly accessible website.). Martineau's Amended Complaint  points out that his work was not simply uploaded to a random website on the Internet – rather, he "published his work . . . at www.WordPress.com ("WordPress") a well-known online publishing platform freely accessible to anyone worldwide via the Internet."[10] Moreover, Martineau notes that "WordPress's online organizational system featured key-word hypertext links that allowed readers to ***easily*** search and explore content on WordPress, including Martineau's published work." [11]

Thus, Martineau's Amended Complaint does not simply allege that his works were merely posted online; rather, they were published on a well-known literary web site that was easily accessible by any third party inclined to look for such science fiction or fantasy works.  Further, the content on the WordPress website was capable of being efficiently searched using key words and/or other search terms.  Bungie's motion mischaracterizes Martineau's allegations as merely suggesting that Bungie "could have" found Martineau's work on WordPress.

Martineau's Amended Complaint does not stop there  - the Amended Complaint contains clear allegations that Bungie actively copied from outside sources, utilized a 400-member creative

---

[9]     Exhibit A, ¶¶61 and 66; Rec. Doc. 24, ¶¶61 and 66.

[10]    Exhibit A, ¶15; Rec. Doc. 24, ¶15.

[11]    Exhibit A, ¶16; Rec. Doc. 24, ¶16.

team to search the web to generate ideas, and found and copied Martineau's work.[12] Martineau's pleading expressly describes a specific sequence of events that factually support the reasonable conclusion that Bungie accessed and copied Martineau's source work.[13]

Bungie's head creator publicly admits that Bungie's creative process involved looking at and drawing inspiration from a broad range of online sources including but not limited to: the 1969 film *Stalker* by Andre Tarkowski; westerns such as *The Good, the Bad and the Ugly*; Terry Gilliam's film *Time Bandits*; works of artists like John Harris, Zdzislaw Beksinski, and Peter Gric; Anime; the military; other action heroes from other works of fiction; sports stars[14]

It is completely plausible that Bungie, using a force of 400 tech-savvy individuals tasked with the goal of scouring the internet to find inspiration, had a reasonable opportunity to view Martineau's work, which was readily available online and published on a well-known and easily searchable literary publishing platform. When viewing these allegations in a light most favorable to the non-moving party  this Court should find these allegations sufficient to support a legally cognizable claim of access.  See *McLin v. Ard*, 866 F.3d 682, 688 (5th Cir. 2017) ("In reviewing the complaint, we 'draw all inferences in favor of the nonmoving party, and view all facts and inferences in the light most favorable to the nonmoving party.'").

In addition to alleging access, Martineau's Amended Complaint directly alleges probative similarities between Martineau's work and Bungie's Destiny 2 game.[15] A plaintiff can show

---

[12]    Exhibit A, ¶¶61, 66, 48-49 and 59; Rec. Doc. 24, ¶¶61, 66, 48-49 and 59.

[13]    Exhibit A, ¶60; Rec. Doc. 24, ¶60.

[14]    Exhibit A, ¶57; Rec. Doc. 24, ¶57.   Members of Bungie's management team discuss Bungie's creative process in an embedded video presentation posted at the following internet web address: https://gdcvault.com/play/1017789/Brave-New-World-New-Bungie

[15]    Exhibit A, ¶84; Rec. Doc. 24, ¶84.

probative similarity by pointing to "any similarities between the two works" even as to unprotectable elements, 'that, in the normal course of events, would not be expected to arise independently.'" *See Positive Black Talk Inc.*, 394 F.3d 357 at 369-370.  Further, a strong showing of probative similarity can compensate for weaker showing of access. *Id.* at 371-372. Importantly, probative similarity "requires a showing that the works, '***when compared <u>as a whole</u>***[16], are adequately similar to establish appropriation.'" *Gen. Universal Sys., Inc.*, 379 F.3d 131 at 141-142.  Moreover, the probative similarity analysis requires that differences are not emphasized at the expense of the similarities. *See Peel & Co. v. The Rug Mkt.,* 238 F.3d 391, 397-398 (5th Cir. 2001).  Bungie's proposed analysis improperly focuses solely on alleged differences.

In the Amended Complaint, Martineau alleges multiple parallels that collectively establish probative similarity between his work and Bungie's Destiny 2.  Some, but not all, of these similarities are set forth in detail in tabular form in Paragraph 114 of the Amended Complaint. Martineau further lays out multiple additional similarities throughout the extensive and detailed allegations of the Amended Complaint, many of which are described below.   These detailed similarities in characters, tactics, names, themes, events, mood, setting and plot devices suggest that the works share more than coincidental likeness.  Martineau's Amended Complaint alleges "numerous similarities in layout and arrangement" and therefore establishes probative similarity. *Lennar Homes of Texas Sales & Mktg., Ltd. v. Perry Homes, LLC*, 117 F. Supp. 3d 913, 933 (S.D. Tex. 2015).

In the Amended Complaint, Martineau establishes probative similarity between his work and Bungie's Destiny 2 game. These similarities are not coincidental but indicative of copying.

---

[16]    Bungie has failed to provide a complete version of the actual infringing work to support its motion.

Martineau's work features a militaristic alien group, the Red Legion, invading Earth to seize Tononob Station, mirroring Destiny 2's Red Legion's objective to overtake the Traveler.[17]  The sequence of events, including the Red Legion's introduction, aligns closely in both works, where there is an initial invasion of the Red Legion during a military conquest. Martineau uniquely names and structures the Red Legion, using terms like "Legionnaires," – terms also used in Destiny 2.[18] Both works' antagonists, Yinnerah and Dominus Ghaul, rise from outcasts to become leaders, calling themselves "Gods," sharing similar battle tactics and internal conflicts.[19]

Both works include laser-beam and flame weapons and mind transfer technology, with similar communication tools like digital input devices and "boosters."  Martineau alleges both works feature "beacons" receiving encrypted Red Legion "transmissions," and critical plots around spaceship "reactors," highlighting a connection beyond coincidence.[20] These detailed similarities in characters, tactics, names, themes, and plot devices bolster Martineau's claims of probative similarity. The overwhelming similarities described in Martineau's Amended Complaint are not coincidental, but rather indicative of copying.  Put another way, when compared **as a whole**, and when considering the similarities between the works instead of their differences, it is clear that the works are sufficiently similar to suggest appropriation and establish probative similarity. Accordingly, the element of factual copying (whether via direct copying or circumstantial evidence of copying) is clearly satisfied by the allegations of Martineau's Amended Complaint in this case.

---

[17]      Exhibit A, ¶180; Rec. Doc. 24, ¶180.

[18]      Exhibit A, ¶130; Rec. Doc. 24, ¶130.

[19]      Exhibit A, ¶117; Rec. Doc. 24, ¶117.

[20]      Exhibit A, ¶¶167 and 177; Rec. Doc. 24, ¶¶167 and 177.

iii)    <u>Allegations of Striking Similarity</u>

In certain instances, factual copying can be established without demonstrating access if the two works exhibit such striking similarities that the similarities negate the likelihood of having been created independently. *Gen. Universal Sys., Inc.*, 379 F.3d 131 at 142. In *Batiste v. Lewis*, this Court required a demonstration of "striking similarity" due to the lack of allegations showing access and correctly concluded that plaintiff met this standard by alleging his eleven songs were so similar to the defendants' five songs that the only explanation was copying. *Batiste*, 2018 WL 2268173 *3. Martineau alleges that the numerous and extensive parallels between his work are striking[21], and Bungie's infringing content are such that copying is the only plausible explanation.

### 3.  *Substantial Similarity*

As set forth above, Bungie improperly attempts to draw this Court into a detailed substantive comparison of the works at issue to evaluate whether the subject works are substantially similar.[22]   However, as this Court explained in *Batiste,* "the Court is limited to the facts alleged in the complaint; it is not acting as a factfinder. A decision on the merits based on the Court's judgment of the similarity of the [works] is inappropriate at this stage of the proceedings." *Batiste,* 2018 WL 2268173 *3.  Thus, at the motion to dismiss stage, the Court must determine only "whether [plaintiff]'s complaint, taken as true, plausibly alleges the three requirements to a successful claim [for copyright infringement]." *Id*.

---

[21]     Exhibit A, ¶¶84, 113, 116, 127, 176, 201 and 215-217; Rec. Doc. 24, ¶¶ 84, 113, 116, 127, 176, 201 and 215-217.

[22]     The third requirement of copyright infringement, substantial similarity, exists if a layman would "detect 'piracy without any aid or suggestion or critical analysis by others.'" *Peel & Co. v. The Rug Mkt.,* 238 F.3d 391, 398 (5th Cir. 2001) (quoting *Harold Lloyd Corp. v. Witwer*, 65 F.2d 1, 18 (9th Cir. 1933)).

Martineau's Amended Complaint – which must be taken as true – clearly alleges substantial similarity between Martineau's work and Destiny 2. The Amended Complaint contains an entire section under the bold and capitalized heading: "**SIMILARITIES BETWEEN MARTINEAU'S WORK AND DESTINY 2"**, and then goes on to allege such parallels (in many cases specifically using the word "similar" or variations thereof) throughout the pleading.[23] Given the foregoing and the table of similarities in the Amended Complaint, it is clear that Martineau's 56-page Amended Complaint directly alleges substantial similarity between his work and Destiny 2, further offering detailed evidence of these similarities.

Martineau's work is a literary creation that Bungie has copied, in many instances verbatim. Bungie has not only copied names and titles – but also intricate elements copied **<u>verbatim</u>** from Martineau's work—*including but not limited to*: The Red Legion, Legionnaires, Echoes, Projections, Oracle, Fox (referencing a spaceship **verbatim** in both works), Red Legion Transmissions (not coincidentally intercepted, encrypted, and decrypted **verbatim** in both works), Fail-Safe, Hive, Council, Speak/Speaker, Transversion, Reactors, Beacons, Empire (referencing Red Legion reign **verbatim** in both works), Outcast, God, Immortal, Leader of the Red Legion (shared **verbatim** qualities between Ghaul and Yinnerah in both works), Greed and Corruption (**verbatim** shared experience of Red Legion in both works), Engineers, Guardians, Ghaul's Chosen/ Yinnerah's Chosen. In other words, the Amended Complaint's allegations clearly assert that Bungie's copying surpassed the mere borrowing of words or phrases. "Even for works warranting little copyright protection, **<u>verbatim</u>** copying is infringement." *Eng'g Dynamics, Inc.,* 26 F.3d 1335 at 1343. Bungie even takes Martineau's sentence structure **<u>verbatim</u>** and used after

---

[23]    Exhibit A, ¶¶97, 67, 108, 116-118, 127, 129, 134, 145-146, 112 167, 169, 180 and 184; Rec. Doc. 24, ¶¶97, 67, 108, 116-118, 127, 129, 134, 145-146, 112 167, 169, 180 and 184.

Red War – Season 1: "Emperor Calus **has spoken**" (Destiny 2) is mirrored in "Yinnerah **has spoken**." (Martineau's work).

In the Amended Complaint, Martineau describes his work as featuring a militaristic alien group known as "the Red Legion," which invades Earth with the ambition of seizing control of an elevated celestial entity called Tononob Station, a location that possesses valuable assets. Martineau's Amended Complaint further asserts that Destiny 2 also featured a militaristic alien group known as "the Red Legion," that invaded Earth with the objective of overtaking a celestial entity called the Traveler, a location that similarly held valuable assets. These alleged similarities, between Martineau's copyrighted work and Destiny 2 clearly allow the Court to accept that the striking parallels are more than a mere coincidence.

Furthermore, Martineau's Amended Complaint not only alleges the existence of these similarities but also highlights that the timing and sequence of events involving the Red Legion's introduction directly mirror his work. In Martineau's Amended Complaint, the Red Legion is described as marching, monitoring humans from above, and invading Earth. Specifically, it is alleged Destiny 2 began similarly with an invasion of Earth.

Martineau's Amended Complaint alleges that the Red Legion military group, uniquely named and structured by Martineau, includes "Legionnaires" as part of a defined military hierarchy. Martineau uses the term "Legionnaires" to describe members of an alien-based military group called "the Red Legion," which shares the same goals, military tactics, attitude, and nearly identical weaponry as the Red Legion in Bungie's Destiny 2. The Red Legion in both works are led by characters with seemingly identical individual backgrounds: Yinnerah, in Martineau's work, and Dominus Ghaul, in Destiny 2. Further, both characters rise from humble beginnings as societal outcasts to eventually become powerful leaders of a military group (both named the Red

Legion). Martineau alleges that during their respective reigns, both characters Yinnerah and Dominus Ghaul, harbor grandiose perceptions of themselves, both oddly referring to themselves as "Gods".

Martineau's Amended Complaint further alleges that both Red Legions use similar battle tactics - employing flame-based weaponry and unique war beasts that march with the Red Legion during their military conquests, illustrating a shared approach to conflict. Martineau further alleges that both Red Legions experience turmoil within their military group that results in violence and brutality in the ranks. The connection is not mere coincidence, as the violence within both Red Legions involves conflicts between subordinate and superior members stemming from disagreements over military strategy and tactics.

Additionally, Martineau's Amended Complaint alleges that both works describe a powerful beam weapon central to the Red Legion's plans to destroy Earth — the atonizer in Martineau's story and the Almighty in Destiny 2. Martineau's Amended Complaint further alleges that both works explore unique ideas like mind transfer technology, with Martineau's technology called transversion and Destiny 2's version called Exos and Transversive Steps. Furthermore, both works describe digital input panels and related devices – the technology serves as an essential tool for communication and control in both works. In Martineau's work, digital input devices are portrayed as integral for receiving messages through audible transversions; in Destiny 2, the "booster" enables processing of messages at an electronic receiving station after being procured by a player in Destiny 2.

Martineau's Amended Complaint alleges that both his work and Destiny 2 feature "beacons," another ***verbatim term*** chosen by Martineau and directly copied by Bungie. These "beacons" receive Red Legion encrypted "transmissions" (another of Martineau's terms that was

copied verbatim) - in both works the encrypted transmissions must be decrypted in order to uncover Red Legion plans. These elements are directly paralleled in both Martineau's work and Destiny 2.  Additionally, there are critical elements in both works that involve spaceship "reactors" that characters must address to prevent disasters, as well as Martineau's distinctive naming of a spaceship as the Red "Fox" in his work and Bungie's use of the name Skulking "Fox".

Bungie's description of Destiny 2 reveals the opening scene as the Red Legion's attack on the Last City. In a parallel fashion, the first poem in Martineau's work describes the Red Legion's march during a new military conquest. This shared initial event serves as the starting point for the Red Legion's military endeavors in both Destiny 2 and Martineau's work. Bungie had the creative freedom to choose a myriad of different scenes to begin their game, yet they opted for an initial event strikingly similar to the one depicted in Martineau's work. The choice to mirror such a specific scene suggests a lack of creative divergence, pointing towards the conclusion that Bungie copied Martineau's original work.   Bungie even used the exact same color-scheme to depict the Red Legion as originally and uniquely chosen and expressed in Martineau's work. Martineau's work describes the Red Legion as "Red, Dark Crimson, and Evil Blue". Not coincidentally, Destiny 2's Red Legion depicts the Red Legion as red, dark crimson, and blue.

In addition to the previously noted similarities, in Destiny 2, a member of Earth's forces is kicked off a cliff after Ghaul berates the individual with disgust and subsequently brought into Dominus Ghaul's chamber, restrained and subjected to questioning. This sequence closely mirrors a passages from Martineau's work, which describes, "Upon death, I was transported to the chamber of Yinnerah (the blueprint character for Dominus Ghaul) where I was tortured for betraying his intent." This unique and specific sequence of events—where an individual is taken to the Red Legion's leader's chamber for torture following their demise—shows a striking similarity. Bungie's

depiction of this scenario in Destiny 2, when compared to Martineau's work, implies more than mere coincidence, highlighting a distinctive plot element that appears to have been directly copied from Martineau's work. Martineau's work features intricately detailed characters and unique elements such as the Red Legion's use of "flame atomizers" and "miogas" against civilian settlements, which is mirrored in Destiny 2 with the use of flame throwers and war beasts.

As set forth above, Martineau's Complaint alleges that Destiny 2 exhibits a number of significant similarities, so much so that the deep and numerous parallels negate the likelihood of the infringing work (Destiny 2) having been created independently. *Gen. Universal Sys., Inc. v. Lee,* 379 F.3d 131, 141-142 (5th Cir. 2004). Moreover, Martineau's Complaint sufficiently alleges striking similarity, a significantly higher standard than substantial similarity, underscoring that his Amended Complaint has established substantial similarity. *Batiste,* 2018 WL 2268173 *4, citing, *See Vallery v. American Girl Dolls*, Civ. No. 13-5066, 2015 WL 1539243, *3 (E.D. La. Apr. 6, 2015) ("The test for striking similarity is stringent and imposes a much high standard than that for substantial similarity."). Accordingly, the element of substantial similarity is clearly satisfied by the allegations of Martineau's Amended Complaint.

C. Bungie's Motion to Dismiss Must Be Denied Because It Is Not Based Upon a Direct Comparison of the Actual Works at Issue.

Although the Defendant argues for a side-by-side comparison between Martineau's work and the infringing Destiny 2 game, Bungie's motion to dismiss is fatally flawed because the motion itself is not even based on a direct comparison of the actual works at issue. Instead of providing the actual Destiny 2 work, Bungie again premises its entire motion upon fan-made and incomplete derivative works that are irrelevant to Martineau's copyright infringement claim.[24]

---

[24]     Contemporaneously herewith Plaintiff Martineau has filed a Motion to Strike the improper materials attached to Bungie's motion. For the reasons set forth in detail therein, the Court should exclude the irrelevant and incomplete materials supporting Bungie's motion.

The snippets of third-party generated content attached to Bungie's motion are not even a complete version of the infringing Destiny 2 work; the attachments to Bungie's motion are merely certain clips pulled from a third-party web site that were selected by Bungie and that represent only a small fraction of Destiny 2.   Martineau has never limited his allegations or the scope of his claims to only a certain limited portion of the infringing work – to the contrary, Martineau's Amended Complaint clearly and unambiguously alleges that his copyrights were infringed by the ***entire*** Destiny 2 video game.   As such, it is clearly improper for Bungie to cherry-pick certain parts of fan-generated material – which is not even the actual Destiny 2 – in order to claim that the works are not similar, all while failing to provide the entire Destiny 2 work to the Court.

Bungie's Rule 12(b)(6) motion neither attaches nor directly analyzes the actual infringing Destiny 2 game that is at the heart of Plaintiff's copyright infringement claim.  Instead, Defendant bases its entire motion on certain works created by third parties; such third party works clearly must not be allowed to serve as a substitute for the actual infringing Destiny 2 game for purposes of a motion to dismiss.   Put another way, there is no test for copyright infringement that involves a side-by-side comparison between a Plaintiff's work and derivative approximations of the infringing work made by unknown third parties and randomly posted on the internet.    Because Bungie has failed to provide the complete and infringing work, the Court cannot grant Defendant's Motion to Dismiss.  Bungie's motion must be denied for this reason alone.

    D.  Martineau's Work is Entitled to Copyright Protection

Bungie's motion incorrectly asserts that Martineau's work lacks copyrightable subject matter.   As set forth above, factual determinations are not appropriate at this stage of the proceedings. *Batiste v. Lewis*, 2018 WL 2268173, at *4 (this Court previously ruled that such an

analysis involves factual determinations inappropriate at the pleading stage). Because this analysis necessarily requires factual determinations by the Court – and because expert testimony should assist the court with this analysis – it is not appropriate at this stage of the proceedings. Nonetheless, Martineau will briefly address the inherent deficiencies with Bungie's assertions regarding the protectability of Martineau's work.

    1) <u>Literary Works</u>

Martineau's work is an original work of authorship—a literary creation expressed in words—fixed in a tangible medium, demonstrating independent creation and requisite creativity through its detailed, unique, and imaginative narrative. 17 U.S.C.A. §§ 101, 102(a) ("Copyright protection subsists ... in original works of authorship fixed in any tangible medium of expression.").

Although copyright protection is not available to all literary works, infringement is more probable when a defendant copies a "*memorable phrase from a short poem*", compared to copying an explanatory statement from an extensive science textbook. *Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1343 (5th Cir. 1994). Bungie selectively cites law from other jurisdictions to argue that 'the Red Legion' and other copied phrases and titles from Martineau's work are not copyrightable, aiming to divert the Court's attention from its acts of copying.

Ironically, while accusing Martineau of trying to make apples look like oranges, Bungie attempts to convince the Court that Martineau's 115-page work consists solely of short phrases, titles, and single words. Bungie references *Batiste v. Najm* to argue that mere words, short phrases, and character names do not warrant copyright protection, inadvertently citing a case that undermines their position. In *Batiste v. Najm,* this Court also held that there were fact issues reserved to be decided by a jury, aligning with a subsequent decision rendered from this Court that

21

Bungie refuses to address - *Batiste v. Lewis*.  *Batiste v. Najm*, 28 F. Supp. 3d at 626.

It is important to note that Bungie has not only copied names and titles from Martineau's work—*including but not limited to*: The Red Legion, Legionnaires, Echoes, Projections, Fox (referencing a spaceship), Red Legion Transmissions (which not coincidentally must be decrypted in both works), Fail-Safe, Transversion, spaceship reactors, and the use of beacons—but also mirrored the developed narrative. In other words, the Amended Complaint's allegations assert that Bungie copying surpassed the mere borrowing of words or phrases. "Even for works warranting little copyright protection, verbatim copying is infringement." *Id.*  Martineau's work is a literary creation that Bungie has copied, in many instances verbatim.

2) *Scenes-a-faire* and Characters

The first sentence of Bungie's *Scenes-a-faire* analysis cites *Eng'g Dynamics, Inc. v. Structural Software, Inc.*, advocating for the Court to apply the filtration analysis to challenge Martineau's work. However, Bungie notably omits certain key limitations from this case, which caution that while the filtration approach offers a structured framework for evaluating copyright infringement, it should ***not*** be regarded as a definitive predictor of outcomes in specific cases. *See Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1343 (5th Cir. 1994). The Court acknowledges that protectable originality can appear in diverse forms, necessitating flexibility in the analytical method to suit the specific facts of each case. *Id.*

Bungie's arguments based on "*Scenes-a-faire*" are further misguided because alleged *Scenes-a-faire* content can evolve from being mere stock scenes to protected expression when plots become more intricately detailed, characters develop idiosyncratic traits, and the sequence of events within the work are unique.  *Latele Television, C.A. v. Telemundo Commc'ns Grp., LLC*, No. 12-22539-CIV, 2015 WL 427817 * 18-20 (S.D. Fla. Feb. 2, 2015) (***citing this Court***, *Batiste*

*v. Najm,* 28 F.Supp.3d 595, 624–625 (E.D.La.2014), to support its decision to deny summary judgment). Martineau's work transcends *Scenes-a-faire* through its unique expression.    As non-exhaustive examples, Martineau's work reflects an intricately detailed story of the Red Legion's invasion of Earth that develops into the unique goal of overtaking assets on a floating celestial entity above Earth (This is mirrored in Destiny 2).

Moreover, the development of distinctive characters within the work, like Yinnerah, who rises from **outcast** to leader while oddly referring to himself as **immortal** and a **God**, is a sufficiently idiosyncratic trait (which is mirrored in Destiny 2 by Dominus Ghaul).    *Bach v. Forever Living Prods. U.S., Inc.*, 473 F. Supp. 2d 1127, (W.D. Wash. 2007) (The character "Jonathan Livingston Seagull," from the novel of the same title, is copyrightable despite arguments that it is merely a compilation of unprotectable ideas. The character's originality lies in being a common seagull with a unique determination to fly higher and faster, surpassing his origins and inspiring others.)    The unique sequence of events in Martineau's work, such as interception and decryption of Red Legion transmissions, internal conflict within the Red Legion between subordinate and superior members, and use of unique flame-based and laser weaponry, among other details, all collectively establish the work as a protectable expression under copyright law.[25]

3)  Originality and Idea v. Expression Dichotomy

Bungie mischaracterizes and oversimplifies Martineau's work by selectively quoting the Amended Complaint. Specifically, Bungie highlights incomplete excerpts such as the use of "beacons as devices for receiving messages," the transmission and deciphering of "encrypted messages," and the presence of "extremely powerful weapons that can bring about the destruction

---

[25]    These are just some illustrative examples of unique and protectible forms of expression in plaintiff's work, and they are not intended to represent an exhaustive list.

of an entire race" alongside alien "surveillance of Earth" and then attempt to lump these five distinct elements—selected and simplified by Bungie—into a singular analogy, comparing them to a case where aliens on a space ramp were deemed scenes à faire. Thereafter, Bungie attempts to associate their incomplete handpicked allegations with a Second Circuit case, listing a host of broad sci-fi themes, that cannot accurately be analogized with the intricate details and distinctive features within Martineau's work.

Martineau's work is not merely a collection of ideas, but rather a sufficiently developed work with a cohesive storyline and intricately detailed characters. While the storyline could have evolved in numerous directions, Martineau's work is infused with his unique individualism and skill, which through his expression, resulted in an elaborate and original composition. *Id.* ("The vast majority of works make the grade quite easily, as they possess some creative spark."). Bungie's reliance on the idea-expression dichotomy to argue for dismissal overlooks these details in Martineau's work. Martineau's work features distinctive elements, intricately detailed to contribute to a creative plot that is sufficiently expressed and linear to be protectable. *Feist Publications v. Rural Tel. Service,* 499 U.S. 340, 358 (1991) ("The requisite level of creativity is extremely low; even a slight amount will suffice.")

In evaluating the originality of a work, courts may consider whether major plot developments could have reasonably unfolded in different ways, indicating the presence of creative choices. *Latele Television, C.A.*, 2015 WL 427817 * 13 (S.D. Fla. Feb. 2, 2015). If a host of alternative scenarios could have led to key events, rather than mirroring each other, it indicates that the work possesses enough originality and creative expression to merit copyright protection. *Id.* at *14. Furthermore, Martineau's work includes coding that was used to arrange and guide the reader as new content was released and published on WordPress. Martineau's work also used

other programmed  HTML features such as tag clouds and links that directed the reader to other relevant posts.

Because all reasonable inferences must be drawn in favor of Martineau, this Court should find that his work contains sufficient original expression to warrant copyright protection. *Google LLC v. Oracle Am.*, *Inc.*, 593 U.S. 1, 20 (2021) (Copyright protection is more likely to extend to a work that is fictional rather than factual, as the creativity inherent in fiction aligns more closely with copyright's emphasis on artistic expression).

To prove copyright infringement, a plaintiff must establish that the plaintiff's work has sufficient originality to warrant protection. 17 U.S.C.A. §§ 101, 102(a).  This case should advance to the discovery phase, enabling both parties to engage experts who can offer crucial insights into the work's characteristics. *Interplan Architects, Inc. v. C.L. Thomas, Inc.*, No. 4:08-CV-03181, 2010 WL 4065465 * 13 (S.D. Tex. Oct. 9, 2010) (Although experts cannot provide legal opinions, an expert opinion is useful to provide insight into the unique characteristics of a work that may support a legal finding of originality).

Further, determination of this issue is not appropriate at this stage of the proceeding, particularly given the complex nature of the idea-expression analysis required in this case. While Martineau's copyrightable work is attached to Bungie's motion, any determination of originality should occur ***after*** the discovery phase of litigation. *See Stadium Chair Co., LLC v. Costco Wholesale Corp.*, No. SA-14-CV-00630-OLG, 2014 WL 12493283 * 2 (W.D. Tex. Dec. 17, 2014). (The determination of whether a work qualifies as original should be addressed "*through discovery and summary judgment*" proceedings, rather than through a premature motion for summary judgment.).

V.    **CONCLUSION**

For all of the reasons set forth above, Bungie's Rule 12(b)(6) motion should be denied.

<div style="margin-left: 40%">

Respectfully submitted:

 s/Ted M. Anthony
Ted M. Anthony (La. Bar Roll No. 21446)  (T.A.)
BABINEAUX, POCHÉ, ANTHONY
    & SLAVICH, L.L.C.
P. O. Box 52169
Lafayette, LA  70505-2169
Telephone:  (337) 984-2505
Facsimile:  (337) 984-2503
Email:  tanthony@bpasfirm.com

AND

BARRY ROME & SCOTT
STEPHEN R. BARRY (La. Bar Roll No. 21465)
A Professional Law Corporation
612 Gravier Street
New Orleans, Louisiana 70130
Tel: (504) 525-5553
Email: sbarry@barryrome.com
ATTORNEYS FOR  PLAINTIFF

</div>