# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MATTHEW KELSEY MARTINEAU,<br><br>*Plaintiff*,<br><br>v.<br><br>BUNGIE, INC., a Delaware Corporation; DOES 1-10, inclusive,<br><br>*Defendants*. | CIVIL ACTION NO. 24-cv-2387<br><br>JUDGE SUSIE MORGAN<br><br>MAGISTRATE JUDGE MICHAEL B. NORTH |

### BUNGIE, INC.'S REPLY IN SUPPORT OF ITS RULE 12(b)(6) MOTION TO DISMISS ALL COUNTS OF MARTINEAU'S FIRST AMENDED COMPLAINT

**TABLE OF CONTENTS**

Page

I. THE COURT MAY CONSIDER THIRD PARTY MATERIALS ATTACHED TO BUNGIE'S MOTION .................................................................................................. 2

II. THE COURT CAN AND SHOULD DISMISS BASED ON A SIDE-BY-SIDE COMPARISON .................................................................................................................. 2

III. MARTINEAU FAILS TO ALLEGE DIRECT EVIDENCE OF COPYING .................... 4

IV. THE COURT SHOULD NOT INFER PRIOR ACCESS FROM MARTINEAU'S PLEADING .......................................................................................................................... 5

V. THE COURT SHOULD NOT RELY ON MARTINEAU'S ALLEGATIONS OF STRIKING SIMILARITY .................................................................................................. 6

VI. THE COURT SHOULD NOT RELY ON MARTINEAU'S LIST OF ALLEGED SIMILARITIES ................................................................................................................... 7

VII. THE COURT SHOULD FILTER OUT UNPROTECTABLE ELEMENTS DURING COMPARISON .................................................................................................. 8
    a. Mere Words, Names, Titles, and Short Phrases Are Unprotectable ...................... 8
    b. Martineau's Asserted Elements Do Not Transcend Scènes à Faire ........................ 9

VIII. MARTINEAU'S OPPOSITION IS PLAGUED WITH PROCEDURAL PROBLEMS ........................................................................................................................ 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Batiste v. Lewis*,
  2018 WL 2268173 (E.D. La. May 17, 2018) ................................................................. 3, 4, 7

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................................. 6

*Eng'g Dynamics, Inc. v. Structural Software, Inc.*,
  26 F.3d 1335 (5th Cir. 1994) ................................................................................................... 8

*Flowserve Corp. v. Hallmark Pump Co.*,
  2011 WL 1527951 (S.D. Tex. Apr. 20, 2011) ..................................................................... 5-6

*Gottlieb Dev. LLC v. Paramount Pictures Corp.*,
  590 F. Supp. 2d 625 (S.D.N.Y. 2008) ................................................................................... 2

*Guzman v. Hacienda Recs. & Recording Studio, Inc.*,
  2014 WL 6982331 (S.D. Tex. Dec. 9, 2014) ........................................................................ 7

*Hanagami v. Epic Games, Inc.*,
  85 F.4th 931 (9th Cir. 2023) .................................................................................................... 4

*Mallon v. Marshall*,
  95 F. Supp. 3d 274 (D. Mass. 2015) ...................................................................................... 4

*Positive Black Talk, Inc. v. Cash Money Records, Inc.*,
  394 F.3d 357 (5th Cir. 2004) ................................................................................................... 6

*Randolph v. Dimension Films*,
  634 F. Supp. 2d 779 (S.D. Tex. 2009), *summarily aff'd*, 381 F. App'x 449 (5th
  Cir. 2010) ........................................................................................................................ 2, 4, 7, 8

*Rucker v. Harlequin Enters., Ltd.*,
  2013 WL 707922 (S.D. Tex. Feb. 26, 2013) .......................................................................... 3

*Shell Offshore Inc. v. Eni Petroleum US LLC*,
  2017 WL 4812409 (E.D. La. Oct. 25, 2017) (Morgan, J.) ................................................. 10

*Taylor v. IBM*,
  54 F. App'x 794 (5th Cir. 2002) ............................................................................................. 8

*Vallery v. Am. Girl Dolls*,
  2015 WL 1539253 (E.D. La. Apr. 6, 2015), *aff'd*, 697 F. App'x 821 (5th Cir.
  2017) ...................................................................................................................................... 3-7

**Other Authorities**

37 CFR § 202.1(a)..................................................................................................................8

4 NIMMER ON COPYRIGHT § 13D.22 (2024).........................................................................3

L.R. 7.7...................................................................................................................................9

Bungie, Inc. ("Bungie") hereby replies to Plaintiff Martineau's Opposition to Bungie's Rule 12(b)(6) Motion To Dismiss (the "Opposition"), filed on April 15, 2025. Dkt. 30.

On March 10, 2025, this Court *sua sponte* granted Martineau "an opportunity to address the deficiencies raised in Defendant's motion to dismiss." Dkt. 23 at 5. The Court made clear that any amended pleading filed "must address, fully and completely, all arguments raised in the Defendant's motion to dismiss," and even provided Martineau a detailed summary of Bungie's arguments. *Id.* at 2-5. Despite this clear roadmap, neither Martineau's amended complaint ("FAC") nor his Opposition comply with the Court's instructions. This is at least in part due to the fact that the original complaint's deficiencies cannot be cured, as no additional or tweaked verbiage in the new pleading can alter the fact that *Destiny 2* does not infringe any copyrights in *The Red Legion* as a matter of law. Instead of accepting this facial implausibility of his claims, Martineau unsuccessfully attempts to rework them in the FAC, and even insinuates that it is *Bungie* that has acted improperly by "fil[ing] yet another motion to dismiss" after the "Court . . . already denied Bungie's original [motion]." Dkt. 30 at 1. This grossly mischaracterizes the procedural history of this case and Bungie's appropriate response to a legally and factually baseless claim.

Martineau's Opposition largely recycles the arguments of his previous opposition (Dkt. 21) without rectifying the deficiencies or substantively engaging with the legal authorities identified in Bungie's Motion or its previous reply (Dkt. 22). The core and fatal deficiencies remain. This case is not a close call on substantial similarity—none exists. Nor has Martineau plead a nonspeculative access theory despite having two chances to do so. Overall, his Opposition seeks to block this Court from adjudicating Bungie's Motion through an unavailing mix of incorrect legal analysis and conclusory assertions. As discussed herein and in opening, the Court should grant Bungie's Motion and dismiss this action with prejudice.

1

I.      **The Court May Consider Third Party Materials Attached to Bungie's Motion**

As Bungie has previously explained, *Destiny 2* is a live-service game that has evolved significantly over time, such that its long-retired "Red War" and "Curse of Osiris" campaigns (containing nearly all accused elements) are incompatible with the game's current software externalities and operational framework. *See* Dkt. 31-3. Martineau's suit comes seven years after the accused campaigns were launched, and almost four years since their retirement. *Id.* There is now no feasible way for Bungie to provide the Court with a reviewable form of the campaigns or to produce them should this matter proceed to discovery. *Id.* Despite this, Martineau has now ignored **three** sworn declarations from knowledgeable Bungie employees about the impossibility of producing a playable copy of the game's retired campaigns, and as to the accuracy of the provided third-party materials. Dkts. 11-3; 22-1; 31-3. In continuing to insist on the production of the original game, Martineau essentially demands a time machine, but Bungie cannot produce its live-service game as it existed prior to 2020 any more than one could produce a live performance that occurred prior to 2020. As demonstrated by his original complaint (*e.g.*, Dkt. 1 ¶ 128), Martineau necessarily relied on third-party materials for his claims. The Court should reject Martineau's attempt to use those third-party materials as both sword and shield.

II.     **The Court Can and Should Dismiss Based on a Side-By-Side Comparison**

It is well-settled copyright law that on a motion to dismiss this Court can make a side-by-side comparison of the works and decide whether the substantial similarity required for a claim of copyright infringement exists as a matter of law. *Randolph v. Dimension Films*, 634 F. Supp. 2d 779, 787-88 (S.D. Tex. 2009), *summarily aff'd*, 381 F. App'x 449 (5th Cir. 2010) (refusing to reconsider dismissal with prejudice where substantial similarity claim was dismissed as a matter of law); *see also Gottlieb Dev. LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625, 629 n.1,

632 (S.D.N.Y. 2008) (granting Rule 12(b)(6) motion to dismiss and holding that the two works in question, which the court deemed incorporated into the complaint by reference, were not substantially similar); 4 NIMMER ON COPYRIGHT § 13D.22 (2024) ("[I]f the four corners of the complaint, together with its exhibits and other matters incorporated into it by reference, suffice to convince the court, as a matter of law that no jury could find the existence of substantial similarity, then it may instead dismiss the case outright."). Both *Rucker v. Harlequin Enters., Ltd.* and *Vallery v. Am. Girl Dolls*, now cited twice by Bungie and ignored twice by Martineau, confirm this standard at this stage of litigation. *See* 2013 WL 707922, at *4-5 (S.D. Tex. Feb. 26, 2013); 2015 WL 1539253, at *1-2 (E.D. La. Apr. 6, 2015), *aff'd*, 697 F. App'x 821 (5th Cir. 2017)).

Ignoring this precedent, Martineau again relies on the highly distinguishable and inapposite music copyright case, *Batiste v. Lewis*, 2018 WL 2268173 (E.D. La. May 17, 2018), asserting, once again, that a side-by-side comparison of the works "is clearly improper for a Rule 12(b)(6) motion." Dkt. 30 at 5. Martineau even triples down in relying on *Batiste*, which he disingenuously claims "Bungie refuses to address." Dkt. 30 at 21-22. To the contrary, Bungie's previous reply devoted nearly a full page to distinguishing *Batiste*'s inapposite facts, yet the Opposition does not engage with Bungie's arguments. Dkts. 22 at 5; 30 at 10-11.

Thus, Bungie reiterates: in *Batiste*, a jazz musician brought copyright claims alleging that a music duo "copied large portions of his [music] compositions," including their "beat[s], drums, introduction[s] . . . bass line[s,] . . . hook[s], melod[ies], and chords." *Batiste*, 2018 WL 2268173, at *1, 4. Because musical copyright cases often require a technical and specialized comparison of the musical elements of the parties' works, the *Batiste* defendants submitted an expert musicologist's report alongside their motion to dismiss. *Id.* at *2-4. The *Batiste* court declined to compare the musical elements side-by-side at the pleading stage because it did not believe it could

3

do so without considering the expert's report, which was extraneous to the pleadings and therefore not permissible on a motion to dismiss. *Id.* at *4. These facts have nothing to do with this action, and, indeed, the *Batiste* court specified that it *could* consider recordings of the songs at issue at the pleading stage but declined to do so given the necessary aid of extraneous expert testimony in music copyright disputes. *See id.* at *2, 4. Martineau offers no comparable reason the Court cannot presently compare *Destiny 2* and *The Red Legion*—two highly distinctive visual and written works that require no expert analysis for an unequivocal finding of no infringement.

Martineau again cites two additional out-of-circuit decisions that fail to support his argument for the same reasons Bungie previously articulated. *See* Dkt. 30 at 11. The first, *Mallon v. Marshall*, concerns the sufficiency of a joint authorship claim, not substantial similarity between two works. 95 F. Supp. 3d 274 (D. Mass. 2015). The second, *Hanagami v. Epic Games, Inc.*, just like *Batiste*, required a choreography expert because the "judge[] [was] not sufficiently trained in the specifics of the art form at issue to make reliable conclusions about similarity." 85 F.4th 931, 945 (9th Cir. 2023). Notably, *Hanagami* also explicitly acknowledged that "some works are so dissimilar by plain sight that any person observing them could confidently conclude that they do not share substantial similarities." *Id.* Substantial similarity is not a close call here, and Martineau has not supported his bald, conclusory statement that "expert testimony should assist the court with this [similarity] analysis." Dkt. 30 at 21. This Court can and should compare the works at this stage to determine that no substantial similarity and therefore no infringement exists. *Randolph*, 634 F. Supp. 2d at 779 (comparing a book and film side-by-side upon motion to dismiss).

### III. Martineau Fails to Allege Direct Evidence of Copying

To allege factual copying, Martineau must offer either "direct evidence of copying" or circumstantial evidence of "access" and "similarity." *Vallery*, 2015 WL 1539253, at *2.

4

Martineau asserts that the FAC sufficiently alleges "direct copying" and thus, factual copying, because he directly and "unambiguously alleges that Bungie directly copied Martineau's source work." Dkt. 30 at 9. Martineau again conflates bare allegations of "direct copying" with the necessary allegations of "direct *evidence of* copying" that alone can establish factual copying, such as party admissions or witness accounts of copying, or common errors. *Vallery*, 2015 WL 1539253, at *2. Martineau has not alleged such direct evidence exists. Dkt. 30.

### IV. The Court Should Not Infer Prior Access from Martineau's Pleading

Having failed to allege direct evidence of copying, Martineau must (but did not) allege circumstantial evidence of "access" and "similarity." *Vallery*, 2015 WL 1539253, at *2. Indeed, the crux of Martineau's access argument, in his own words, is that his works were "published on a well-known literary web site that was easily accessible by any third party inclined to look for such science fiction or fantasy works." Dkt. 30 at 10. Or, in short, that Bungie conceivably *could have* accessed his work via this hypothetical method, had it been so inclined. *Vallery*, 697 F. App'x at 825 (allegations that defendant *could have* conceivably accessed plaintiff's work insufficient to allege access). But Martineau alleges zero facts supporting that *anyone* at Bungie actually was so inclined, actually searched WordPress, actually visited Martineau's blog, and actually accessed the blog posts that comprise the asserted work. *See id.* (requiring "facts to support this [access] contention," and noting plaintiff's "speculation is not a substitute for facts").

The Court should also reject Martineau's argument that "access can be demonstrated by making copyrighted work publicly available online for others to view." Dkt. 30 at 10. Again, Martineau cites the inapplicable case *Flowserve Corp. v. Hallmark Pump Co.*, which found the similarity of the works at issue "so striking that the Court has no doubt that Hallmark copied Flowserve's images." 2011 WL 1527951, at *5 (S.D. Tex. Apr. 20, 2011). In light of this holding

5

of striking similarity, *Flowserve*'s acknowledgement that the works were publicly available online is mere dicta. *Id.* And the *Flowserve* court specifically noted that the works were publicly available "in widely distributed advertising material," *id.*, circumstances that do not exist here.

### V.    The Court Should Not Rely on Martineau's Allegations of Striking Similarity

Because Martineau fails to sufficiently allege direct or circumstantial evidence of copying, he must show "that the protected and accused works 'are so strikingly similar as to preclude the possibility of independent creation.'"[1] *Vallery,* 2015 WL 1539253, at *3 (citation omitted). This requires the Court to review the works "***without reliance on any 'aid or suggestion'*** from the plaintiff . . .[and] conclude not only that there is overwhelming similarity between the works at issue, but that the similarity 'could only be explained by actual copying.'" *Id.* (emphasis original).

Martineau argues, incorrectly, that the Court must accept as true his bald assertions that Destiny 2 is strikingly similar to his work, and thus find striking similarity sufficiently pled simply through Martineau's use of the word "striking." Dkts. 30 at 19; 30-1. This is not how the law works. In support, Martineau cites only *Batiste*—a rare instance in which the similarity analysis could not be performed at the Rule 12(b)(6) stage due to the highly technical nature of musicological comparison. *See supra* at Section II. Because a comparison of *Destiny 2* and *The Red Legion* does not require technical or specialized expert knowledge, the Court can compare the works at this stage and determine whether they are strikingly similar. In doing so, the Court must not accept as true the FAC's "formulaic recitation of the elements of a [copyright infringement]," including of striking similarity. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Martineau cannot meet the "stringent" bar of striking similarity. *Vallery*, 2015 WL 1539253, at

---

[1] Martineau's reliance on *Positive Black Talk, Inc. v. Cash Money Records, Inc.* for the claim that "a strong showing of probative similarity can compensate for weaker showing of access" is grossly misplaced: the *Positive* court found that "this circuit has not explicitly adopted [the inverse] doctrine," and upheld the lower court's rejection of a jury instruction invoking such. 394 F.3d 357, 372 (5th Cir. 2004); Dkt. 30 at 12.

6

\*3 ("The test for 'striking similarity' is 'stringent' and imposes a 'much higher standard' than that for 'substantial similarity'") (quoting *Guzman v. Hacienda Recs. & Recording Studio, Inc.*, 2014 WL 6982331, at \*5 (S.D. Tex. Dec. 9, 2014)).

### VI.     The Court Should Not Rely on Martineau's List of Alleged Similarities

Martineau again argues that substantial similarity is sufficiently alleged because his FAC includes "an entire section under the bold and capitalized heading: '**SIMILARITIES BETWEEN MARTINEAU'S WORK AND DESTINY 2**'" and because he "specifically us[ed] the word 'similar' or variations thereof" throughout. Dkt. 30 at 14-15. Again, Martineau's sole support for this position is *Batiste*, which, for the reasons discussed *supra* at Section II, does not support his legally incorrect position. The cases cited in Bungie's Motion establish the well-known principle that the Court's substantial similarity analysis cannot be based on a plaintiff's self-serving and cherry-picked list of supposed similarities, *see* Dkt. 26-1 at 16-17, 23, and Martineau does not address that argument nor attempt to distinguish the instant facts. *See, e.g.*, *Randolph*, 634 F. Supp. 2d at 792 (comparison between a book and a film was "properly made without the plaintiff's 'aid or suggestions'"); *Vallery*, 2015 WL 1539253, at \*3 (holding that "this Court can not rely on any analysis or suggestion from plaintiff" when analyzing similarity).

Martineau further argues that "Bungie's proposed [similarity] analysis improperly focuses solely on differences," and that "when considering the similarities between the works instead of their differences, it is clear that the works are sufficiently similar to suggest appropriation and establish probative similarity." *See* Dkt. 30 at 12-13. Although Bungie anticipates the Court will ultimately find *Destiny 2* and *The Red Legion* "facially dissimilar to the ordinary observer in nearly every way," Bungie's Motion is clear that when "comparing the works side-by-side, the Court must look at the works in their entirety." *See* Dkt. 26-1 at 23. Notwithstanding, courts have

7

specifically found that "[d]ifferences play an important role in determining whether two works are substantially similar." *Randolph*, 634 F. Supp. 2d at 788-89 ("As a matter of logic as well as law, the more numerous the differences between two works the less likely it is that. . .one will appear to have been appropriated from the other.") The Court is thus not limited to Martineau's list of alleged similarities, nor similarities in general, when comparing the works side-by-side.

### VII.  The Court Should Filter Out Unprotectable Elements During Comparison

Bungie's Motion cites several in-circuit cases establishing that the first step of the Court's substantial similarity analysis is to filter out the unprotectable elements of Martineau's work, including *scènes à faire*, unprotectable ideas, indistinctly and superficially expressed elements, unprotectable stock characters, and names/short phrases. Dkt. 26-1 at 19-30. In response, Martineau confusingly cites *Eng'g Dynamics, Inc. v. Structural Software, Inc.,* 26 F.3d 1335 (5th Cir. 1994), arguing that "while the filtration approach offers a structured framework for evaluating copyright infringement, it should *not* be regarded as a definitive predictor of outcomes in specific cases." *See* Dkt. 30 at 13. To the extent Martineau intends to argue unprotectable elements should not be filtered out, he provides no explanation why this case specifically warrants an exception. *Id.* As a result, the Court should filter out the unprotectable elements listed in Bungie's Motion.[2]

#### a.  Mere Words, Names, Titles, and Short Phrases Are Unprotectable

It is black letter law that mere words, short phrases, titles, and character names do not merit copyright protection. *See* 37 CFR § 202.1(a); *see also Taylor v. IBM*, 54 F. App'x 794 (5th Cir. 2002) ("The Copyright Act does not protect fragmentary words or short phrases.") In a futile attempt to circumvent this axiom, Martineau again inexplicably cites to *Eng'g Dynamics* (a 1994

---

[2] Martineau notably does not address or oppose the unprotectable nature of the mere ideas and concepts he improperly asserts ownership over, nor that of the indistinctly and superficially expressed elements his FAC asserts, as Bungie previously set forth at Dkt. 26-1 at 18-24.

8

case about the protectability of computer programs), to quote dicta about the protectability of a "memorable phrase from a short poem." *See* Dkt. 30 at 21. Martineau does not argue or explain why the words, short phrases, and names in his work and identified in Bungie's Motion, Dkt. 26-1 at 21-22, should not be filtered from the Court's similarity analysis.

### b.    Martineau's Asserted Elements Do Not Transcend Scènes à Faire

Bungie's Motion argues that the asserted similarities in the FAC are overwhelmingly unprotectable *scènes à faire*. Dkt. 26-1 at 14-17. In response, Martineau baldly asserts his "work transcends *Scenes-a-faire* through its unique expression." Dkt. 30 at 23. Although he references his allegedly "intricately detailed story of the Red Legion's invasion," his "development of distinctive characters," and "the unique sequence of events in [his] work," Martineau does not explain, nor support with any authority, his conclusory statements that the asserted elements from his work are so "intricately detailed," "distinctive," or "unique" as to overcome the established doctrine of *scènes à faire*. *Id.* In contrast, Bungie's Motion explains why Martineau's asserted elements are unprotectable, and his Opposition fails to engage with, or rebut, Bungie's discussion of these elements and supporting case law. *See id.*; *see also* Dkt. 26-1 at 14-22.

### VIII.    Martineau's Opposition is Plagued with Procedural Problems

Martineau's Opposition suffers from many procedural issues, the least of which being that it exceeds 25 pages without prior leave of court. L.R. 7.7. Worse, Martineau seeks to improperly extend his Opposition even further by attaching an exhibit containing additional argument (Dkt. 30-1) and by concurrently filing a motion to strike the third-party materials provided with Bungie's Motion (Dkt. 29), which regurgitates the same flawed arguments set forth in the Opposition. As discussed in Bungie's forthcoming opposition, Martineau's motion to strike is improper and should be disregarded. Martineau's improper intent in filing these extraneous documents is reflected by

9

the fact that his previous opposition to Bungie's first motion to dismiss (Dkt. 21) contained the same arguments within its four corners. *See* Dkt. 21 at 7-8, 12-15 (containing the same conclusory arguments as in Dkt. 30-1); *id.* at 18-20 (making the same argument as Dkt. 29). These additional filings are clearly backdoor—but unavailing—attempts to extend the current Opposition even further beyond Martineau's already-surpassed 25-page limit.

The Opposition also contains several new allegations that should be disregarded as an improper attempt to amend the FAC. *See Shell Offshore Inc. v. Eni Petroleum US LLC*, 2017 WL 4812409, at *1 (E.D. La. Oct. 25, 2017) (Morgan, J.). The Court should therefore not consider the Opposition's link to an extraneous video (Dkt. 30 at 12 n. 14), the claim that both works use the singular words "oracle," "hive," "council," "empire," "greed," "corruption," "engineer," "guardian," "Yinnerah/Ghaul's Chosen," or the past participle "has spoken" (*id.* at 15-16) somewhere in their body, the reference to a torture sequence (*id.* at 20-21), or Martineau's blog's purported use of coding and HTML (*id.* at 29-30). While unpersuasive on myriad fronts, these allegations are ultimately absent from the FAC. Dkt. 24. Relatedly, the Opposition emphasizes that purported similarities between the parties' works *include but are not limited to* those alleged in the FAC and the Opposition. Dkt. 30 at 12, 15, 20, 22-23 and n.25 (indicating allegations are not exhaustive). For example, Martineau states "[s]ome, but not all, of these similarities are set forth in . . . Paragraph 114 of the [FAC]." *Id.* at 17. The Court should disregard Martineau's nebulous claims that undisclosed actionable similarity exists beyond his plead allegations.

## CONCLUSION

For the reasons discussed herein, Bungie respectfully requests the Court grant its Motion.

Dated: April 21, 2025                          Respectfully submitted,

/s/ *Darleene Peters*
DARLEENE PETERS (#25638)

10

CONNOR W. PETH (#39499)
**Irwin Fritchie Urquhart Moore & Daniels LLC**
400 Poydras Street, Suite 2700
New Orleans, Louisiana 70130
Telephone: (504) 310-2100
Facsimile: (504) 310-2101
dpeters@irwinllc.com
cpeth@irwinllc.com

**DLA PIPER LLP (US)**
Tamar Y. Duvdevani (*pro hac vice*)
Jared Greenfield (*pro hac vice*)
1251 Avenue of The Americas, 27th Fl.
New York, New York 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501
tamar.duvdevani@us.dlapiper.com
jared.greenfield@us.dlapiper.com

*Counsel for Bungie, Inc.*