## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

MATTHEW KELSEY MARTINEAU,
*Plaintiff*,

v.

BUNGIE, INC., a Delaware Corporation;
DOES 1-10, inclusive,

*Defendants*.

CIVIL ACTION NO.: 2:24-cv-02387

JUDGE SUSIE MORGAN

MAGISTRATE JUDGE MICHAEL B. NORTH

## DEFENDANT BUNGIE, INC.'S OPPOSITION TO PLAINTIFF MATTHEW KELSEY MARTINEAU'S SECOND MOTION TO COMPEL

Defendant Bungie, Inc. ("Bungie") by and through its attorneys, provides the following response and opposition to Plaintiff Matthew Kelsey Martineau's ("Martineau") November 5, 2025 Motion to Compel (Dkt. 50) ("Second Motion"). The Motion is set for oral hearing on November 13, 2025.

### I.    Background

Martineau's second belated motion to compel only further illustrates how he has failed to diligently and timely prosecute this case.[1]  Eight days after Martineau filed his first motion to compel, he lodged *another* untimely and deficient motion to compel focused on his second set of discovery requests and Rule 30(b)(6) deposition notice ("30(b)(6) Notice"). Dkt. 41.

---

[1] Bungie will not belabor the plethora of discovery deficiencies detailed in Bungie's prior opposition to Martineau's October 28, 2025 compel motion (the "First Motion") except to note that Martineau's second set of discovery requests and 30(b)(6) deposition notice topics are similarly vague and overbroad, and are based on the same inaccurate and self-serving assumptions, for the reasons discussed below.

1

### a. Martineau's Second Discovery Requests

This is the first time Bungie has had any notice that Martineau is dissatisfied with Bungie's discovery responses to Interrogatory Nos. 24-25, Request for Production Nos. 18-33, and Request for Admission Nos. 1-21. Bungie timely served its responses and objections to these discovery requests on September 12, 2025. Dkt. 50-2. It offered to meet and confer regarding the scope and relevance of Interrogatory Nos. 24-25 and Request for Production Nos. 18-30 and 33 and represented it would produce—and now has produced—responsive documents to Request for Production Nos. 31 and 32. *See* Dkt. 50-2. Bungie's objections to Martineau's requests primarily relate to Martineau's fishing expedition for irrelevant information regarding unrelated third-party allegations of infringement which do not concern the "Red War" and "Curse of Osiris" campaigns accused in Martineau's First Amended Complaint. Bungie then made proactive efforts to discuss any outstanding discovery issues by appropriately lodging its objections to Martineau's requests and then expressly indicating its willingness to meet and confer regarding the scope and relevance of the requests. Not once, between Bungie's service of its responses to Martineau's second set of requests on September 12, 2025—including when the counsel for the parties were together in Martineau's counsel's office on October 29, 2025 for Mr. Martineau's deposition—did Martineau attempt to comply with Rule 37's meet and confer requirement before bringing this motion. Duvdevani Decl. ¶ 4.

### b. 30(b)(6) Notice

Similarly, Martineau has rejected Bungie's repeated offers to depose its corporate witnesses and its request to meet and confer to narrow any disputes related to the 30(b)(6) Notice prior to filing this motion. On October 23, 2025, with less than three weeks until close of discovery, Martineau sought, for the first time, to depose Bungie pursuant to Fed. R. Civ. P.

30(b)(6).  *See* Duvdevani Decl. ¶¶ 4, 7, 9, Exs. A, C.  The notice contained 37 deposition topics and included a belated set of document requests.[2]  Dkt. 50-3.  On October 29, 2025, Bungie designated its corporate representatives for Martineau's 30(b)(6) Notice topics and provided its corporate representatives' deposition availability.  Duvdevani Decl. ¶ 8, Ex. B.  On November 3, 2025, Martineau declined to meet and confer with Bungie regarding its responses to Martineau's 30(b)(6) Notice and refused to proceed with the 30(b)(6) deposition, opting to seek premature Court intervention instead.  Duvdevani Decl. ¶ 12, Ex. F.

At bottom, Martineau's continued lack of diligence, refusal to meet and confer, and piecemeal motion practice has needlessly forced the Court to expend judicial resources to resolve issues that could have, and should have, been resolved via the parties' conferring.  The Court should thus deny Martineau's motion for the threshold and independent reason that he has failed to meet his obligations under Rule 37. *See infra* Sec. II. Moreover, the motion fails for two additional, discrete reasons. It is untimely (*see infra* at 4), and Martineau fails to rebut Bungie's proper objections with *any* case law (*see infra* Sec. IV(b)).

---

[2] Martineau's 30(b)(6) Notice also includes 30 additional requests production of documents, which is untimely and duplicative. *See, e.g.*, *Muslow v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 2021 WL 12324129, at *12 (E.D. La. Oct. 8, 2021) ("Plaintiffs' document requests submitted with the proposed Rule 30(b)(6) deposition notice are untimely . . . Plaintiffs should have issued their Rule 30(b)(6) notice at least 30 days before the discovery deadline"); *Rahman v. Allstate Ins. Co.*, 2023 WL 6582993, at *5 (E.D. La. Oct. 10, 2023), *appeal dismissed*, 2024 WL 5055843 (5th Cir. Feb. 8, 2024) ("[A] Rule 30(b)(6) notice must, pursuant to Federal Rules of Civil Procedure 30(b)(2) and 34(b)(2)(A), afford the party deponent at least 30 days in which to respond [to attached document requests]"); *Republic Ins. Co. v. Hous. Auth. of New Orleans*, 2013 WL 12231648, at *2 (E.D. La. June 7, 2013) ("[Plaintiff] did not provide [Defendant] sufficient notice for the production of the documents . . . [Defendant] is not required to produce documents at the Rule 30(b)(6) deposition.  To this extent the motion for a protective order is granted."); *Pauls v. The Prudential Ins. Co. of Am.*, 2016 WL 6397564, at *8 (N.D. Tex. Oct. 28, 2016) ("Where the requesting party has already served the same Rule 34 requests on a party that it then includes in a duces tecum to a deposition notice to the same party for its corporate representative's Rule 30(b)(6) deposition, the party need only respond and produce the documents once.").  In any event, Martineau has not moved to compel on this point, and thus has implicitly forfeited any opportunity to do so.  *See Slack v. Outback Steakhouse of Fla., LLC*, 2022 WL 1177892, at *1–2 (E.D. Tex. Apr. 20, 2022) (plaintiff waived discovery dispute by failing to move to compel production or seek to have court overrule defendant's objections to document request) (citing *Calderon v. Presidio Valley Farmers Ass'n*, 863 F.2d 384, 389 (5th Cir. 1989)).

The Court should first deny Martineau's Second Motion on the independent basis that, like his First Motion, it is untimely. This Court, like others in this Circuit, denies motions to compel as untimely when the motion, like Martineau's, is not filed in time to resolve the discovery issue before the close of discovery. *See Horvath v. Solar Refrigeration & Appliance Serv., Inc.*, 2024 WL 1556863, at *1-2 (E.D. La. Apr. 10, 2024) (North, M.J.) ("[A] motion to compel discovery must be resolved, not just filed, by the discovery deadline…Defendant's motion is untimely because Defendant should have known that any dispute raised by the motion would not be resolved by the discovery deadline"); *see also Parkcrest Builders, LLC v. Hous. Auth. of New Orleans*, 2017 WL 4156499, at *3 (E.D. La. Sept. 19, 2017) (finding motion untimely that sought an order to compel the production of documents two weeks after the discovery deadline); *Fairley v. Wal-Mart Stores, Inc.*, 2016 WL 2992534, at *1, 3 (E.D. La. May 24, 2016) ("It is axiomatic that to complete discovery means that all disputes relative to discovery, including motions to compel, must be filed and resolved prior to that date . . . The Scheduling Order by the Trial Judge clearly indicates that all discovery must be completed by the April 20, 2016, deadline . . . complet[ing] discovery clearly includes the filing of any motion to compel.").

Martineau filed this Second Motion on November 5, 2025, but the Second Motion's submission date of December 3, 2025 comes twenty-three days *after* the close of fact discovery. While Martineau's motion to expedite the Second Motion has been granted, Dkt. 55, the submission falls on the day discovery closes with the hearing taking place after discovery closes.

Further, as discussed *supra* at Section I, Martineau has been in receipt of Bungie's second set of discovery responses for nearly **two months.** Despite this, Martineau identified *no* purported deficiencies to Bungie with its second set of discovery responses prior to filing the Second Motion and ignored Bungie's offer to meet and confer on those discovery requests. Indeed, many of the

responses on which Martineau moves to compel in the Second Motion expressly offer to meet and confer on the request.  *See generally* Dkts. 50-2, 50-3.

Martineau also did not diligently seek to depose Bungie's corporate witnesses.  He only served his 30(b)(6) deposition notice on Bungie on October 23, 2025, **less than three weeks** prior to the close of discovery and with **only twelve business days** remaining in the discovery period to schedule, plan for, and take those depositions.  Duvdevani Decl. ¶¶ 7, 9, Exs. A, C.  Nonetheless, Bungie worked diligently to provide its objections and responses to Martineau's deposition notice, serving them less than a week later accompanied by proposed dates for the deposition.  Martineau promised to revert on confirmation that the dates were acceptable but instead went on to reject them completely.  Duvdevani Decl. ¶¶ 8, 12, Exs. B, F.  Martineau refused to suggest any alternative dates or to meet and confer on Bungie's objections and filed the instant Second Motion instead.  Martineau's Second Motion fails to explain his lack of diligence in waiting until the end of discovery to notice depositions, his unwillingness to proceed with depositions on one of the three different days that Bungie proposed, or his refusal to propose any alternative deposition dates within the discovery period.  Martineau could and should have noticed the Rule 30(b)(6) deposition long ago to give the parties time to address and resolve any disputes about the topics and scope of testimony.  He did not do so.  Thus, Martineau's Second Motion should be denied on this ground alone.  *See Jamil v. Mercedes-Benz Fin. Servs. USA, LLC*, No. 24-1481, 2025 WL 398546 (6th Cir. Feb. 4, 2025) (affirming denial of motion to compel where plaintiff "lacked diligence in her discovery efforts" by noticing depositions two weeks before discovery deadline and then moving to compel such depositions on the discovery deadline).

## II.    Martineau's Second Motion Should Be Denied For Violating Rule 37(a)(1)

The Court should also deny Martineau's Second Motion because he failed to comply with his obligations under Rule 37(a)(1) to meet and confer in good faith regarding the issues raised in the Second Motion.  Fed. R. Civ. P. 37(a)(1).  This Court has routinely denied discovery motions, including motions to compel, where the movant failed to comply with Rule 37(a)(1).  *Beckendorf v. Fleischman*, 2024 WL 4665273 at *1 (E.D. La. Nov. 4, 2024) (denying motion to compel for failure to comply with Rule 37(a)(1)); *Crutchfield v. City of New Orleans*, 2017 WL 4812408 at *2 (E.D. La. Oct. 25, 2017) ("Plaintiff's counsel did not make a meaningful and good-faith effort to resolve the matter 'without court action,' as required by [Rule 37].  For that reason alone the motion [to compel] should be denied.").

Martineau's attempts to avoid this black letter law should be rejected.  The Second Motion fails to show that conferring with Bungie regarding the issues raised in its Second Motion would have been futile.  And indeed, the record points to a contrary conclusion.  For example, when the parties previously met and conferred, despite reaching impasse on many requests, Bungie voluntarily amended many of the discussed discovery responses nine days later to provide discovery on publicly available information and materials Martineau requested but refused to obtain through less burdensome means.  Duvdevani Decl. ¶ 5.  Martineau incorrectly contends that Bungie forced his hand by failing to follow the "applicable discovery rules."  But, he cannot ignore that Bungie's responses to Martineau's second set of discovery requests and 30(b)(6) Notice expressly state that it was willing to meet and confer to discuss the scope of Martineau's requests.  Neither can Martineau ignore that he never attempted to meet and confer before filing this Motion despite having ample time and opportunity to do so.  It is *Martineau* who failed to follow the applicable discovery rules, not Bungie.

6

Martineau's cases to the contrary are inapposite or support *Bungie*.  For instance, in *Holmes v. Reddoch*, the plaintiff, like Martineau here, brought a late motion to compel without meaningfully conferring with defendants, despite defendants' multiple attempts to confer with the plaintiff regarding the deficiencies raised in his motion.  2020 WL 5749157 at *2 (E.D. La. Sept. 25, 2020).  The court noted that "Defendants were willing to cooperate in discovery and even asked Plaintiff to make specific objections to specific requests so that they could better assess the alleged deficiencies and try to come to an agreement without court action."  *Id*.  Here, Bungie made similar attempts, which Martineau rebuffed.  Duvdevani Decl. ¶ 4-5.   In *Holmes*, the Court ultimately **denied** plaintiff's motion to compel, stating that "that Rule 37 requirements were not adhered to, Plaintiff was dilatory in filing his motion to compel, and most of the Defendants' responses adequate."  *Id.* at *6.   In *Robinson v. La Dock Co., Inc.*, the Court found that plaintiff adequately represented that conferring with defendant would have been futile given defendant's "evasive" discovery responses which only stated "not applicable" in response to interrogatories seeking the identification of eyewitnesses and improperly asserting the work product doctrine in response to interrogatories seeking confirmation of the existence of certain documents.  2000 WL 1059860 at *3 (E.D. La. Aug. 1, 2000).  Here, Bungie propounded valid and well-supported relevance, overbreadth, and burden objections to Martineau's second set of requests, and represented its willingness to meet and confer with Martineau to attempt to resolve these objections, but Martineau refused to do so.  Martineau has thus not made a similar showing of futility here, nor would he have been able to do so given Bungie's record of willingness to confer and amend positions after such conferral.

### III.    Bungie's Discovery Responses Are Proper

Martineau has served two sets of discovery requests in this matter.  *See* Dkts. 41-3, 41-2. The first set, served on May 21, 2025, propounded 23 interrogatories and 17 requests for production.  *See* Dkt. 41-2.  The second set, served on August 13, 2025, propounded 2 interrogatories, 15 requests for production, and 21 requests for admission.  *See* Dkt. 50-2. Martineau's Second Motion seeks to compel Bungie's responses to Interrogatory Nos. 24-25, Request for Production Nos. 18-33, and Request for Admission Nos. 1-21.

### a.    Martineau Is Not Entitled To Information Related To Unrelated Third Party Allegations of Infringement (ROGs 24-25, RFPs 18-33, RFAs 1-21[3])

Martineau's Second Motion, much like the first, argues that Bungie's responses to his second set of discovery requests contain improper "unilateral" scope limitations, which is incorrect.  Each and every request in Martineau's second set of discovery requests in this matter seeks information or documents concerning Bungie's alleged "history of previous accusations [of] infringement or settlements."  Martineau has only ever accused specific narrative elements in the original two *Destiny 2* campaigns, *i.e.*, the "Red War" and "Curse of Osiris" campaigns.  None of Martineau's requests enumerated in the Second Motion, however, seeks information or documents concerning those accused works.  Instead, Martineau's Second Motion seeks to compel information regarding allegations of infringement brought by third parties, unrelated to the "Red War" and "Curse of Osiris" *Destiny 2* campaigns accused in the First Amended Complaint. Specifically, these requests seek information regarding unrelated, alleged infringement in the "The Witch Queen" *Destiny 2* expansion, cutscenes from the "Season of the Deep" *Destiny 2* campaign,

---

[3] Martineau seeks to compel Bungie's responses to Martineau's each and every request propounded in his second set of requests for admission, but Bungie avers that in addition to its objections, it submitted responses to RFA Nos. 1, 4-6, 8-10, 13-15, 17-20. *See* Dkt. 50-2.  It is unclear which responses to Martineau's requests for admission Martineau specifically takes issue with considering he relied on several of Bungie's responses in his Second Motion.  Dkt. 50-1 at 4-5.

a NERF-branded replica of a *Destiny 2* weapon, and in the entirely unrelated videogame *Marathon*. But Martineau's First Amended Complaint does not accuse "The Witch Queen" trailer or the "Season of the Deep" campaign, nor does it accuse *Marathon* or any NERF products.

In the Second Motion, Martineau attempts to weaponize Bungie's responses to its second set of requests for admission on these unrelated allegations of infringement by insinuating that because Bungie confirmed the existence of these unrelated accusations by third parties, Bungie must produce further responses and documents responsive to Martineau's document requests on these same topics. However, Bungie's responses to Martineau's requests for admission do not concede the relevance of Martineau's requests. Bungie maintains that these unrelated third-party allegations are irrelevant as to whether the accused "Red War" and "Curse of Osiris" campaigns of *Destiny 2* infringe Martineau's asserted work. *See Action Ink, Inc. v. Anheuser-Busch, Inc.*, 2012 WL 6673125, at *1 (E.D. La. Dec. 20, 2012) (upholding Magistrate Judge's denial of plaintiff's motion to compel discovery concerning unrelated trademark infringement claims against defendant as lacking relevance to instant dispute); *Compaq Computer Corp. v. Ergonome Inc.*, 2001 WL 34104827, at *1 (S.D. Tex. June 27, 2001) (denying motion to compel discovery concerning unrelated claims and past litigation in a copyright dispute); *see also Mollmann v. Zoetop Business Co., Ltd.*, 2023 WL 4291848, at *6 (C.D. Cal. Apr. 25, 2023) (finding discovery seeking documents about unrelated allegations of copyright infringement to be overbroad, irrelevant, disproportional to the needs of the case, and "little more than a burdensome fishing expedition"); *Art Attacks Ink, LLC v. MGA Ent., Inc.*, 2005 WL 8160189, at *5-6 (S.D. Cal. Dec. 27, 2005) (denying motion to compel and holding "that any documents and information other than those directly related to the [accused products] are irrelevant"). Further, to the extent Martineau asserts such information is relevant to a showing of willfulness, none of the alleged prior

9

*accusations* of copyright infringement that Martineau seeks information about ever proceeded to *actual* litigation (as opposed to online chatter), unlike the authority Martineau cites in his Second Motion. *See e.g., CoStar Realty Info., Inc. v. RealMassive, Inc.*, , 2015 WL 13804252 at *3 (W.D. Tex. Aug. 11, 2015) ("prior *suits*" could support a finding of willfulness) (emphasis added); *Stevens v. Aeonian Press, Inc.*, 2002 WL 31387224 at *3 (S.D.N.Y. Oct. 23, 2002) (considering "records of other *lawsuits* filed against Defendants for similar activities" in determining damages resulting from willful infringement) (emphasis added).

### b. Bungie Cannot Produce Documents It Does Not Have (RFPs 31-33)

Martineau's Second Motion additionally seeks to compel production of documents in response to Request for Production Nos. 31-33, which request internal documents *concerning* "Bungie's policies, procedures, and training" related to "verifying the originality of content" and "preventing copyright infringement," as well as internal documents discussing Bungie's alleged "history of copying artwork." Dkt. 50-2 at 32-36. After a reasonable and diligent search, Bungie has produced all documents in its possession, custody, and control in response to Request for Production Nos. 31 and 32, which it understands as seeking internal policy documents. Duvdevani Decl., ¶ 6 (identifying produced responsive documents marked Bates Nos. BNG-00131647, BNG-00131645, and BNG-00131638). To the extent Martineau's Second Motion seeks documents beyond what Bungie has already produced, Bungie cannot produce documents it does not have and, it follows that it cannot be compelled to produce documents it does not have. *Solorzano v. Shell Chem. Co.*, 2000 WL 1145766 at *6 (E.D. La. Aug. 14, 2000); *Beasley v. First Am. Real Est. Info. Servs., Inc.*, 2005 WL 1017818 at *4 (N.D. Tex. Apr. 27, 2005) ("the court cannot compel plaintiff to produce non-existent documents"). To the extent Martineau required clarification regarding whether all documents were produced in response to Request for Production Nos. 31

and 32, Bungie would have provided such clarification had Martineau asked to meet and confer pursuant to Rule 37.  Additionally, Bungie designated multiple corporate representatives to testify regarding Topic 28 of Martineau's 30(b)(6) notice, which encompasses the information sought by Request for Production Nos. 31 and 32: "[t]he process Bungie uses to ensure that its video games do not infringe on the copyrights of third parties, including any policies, procedures, or training implemented to prevent such infringement" and provided multiple dates for those corporate representatives' deposition, which Martineau elected not to pursue.  Dkt. 50-3 at 27.  Therefore, Martineau could have also obtained any further information he sought on the subject of Bungie's internal policies through deposition, if not by conferring, particularly before moving to compel.

Additionally, to the extent Request for Production No. 33[4] seeks documents beyond what Request for Production Nos. 31 and 32 seek, Bungie properly objected to this request based, in part, on its vagueness and sought clarification via a meet and confer with Martineau.  This request was plagued with undefined terms making it difficult for Bungie to ascertain the scope of the request and therefore what to search for in its records.  Dkt. 50-2 at 32-36.  Again, Martineau refused to engage in a discussion with Bungie to clarify his request and instead, is now demanding responses to the request as written.

### c.  Bungie's Objections Are Appropriately Tailored to the Requests

Martineau's Second Motion, like his first, claims, without providing specific examples, that Bungie's objections are boilerplate or general.  Dkt. 50-1 at 8.  This is not an accurate characterization.  Bungie's overbreadth, undue burden, relevance, and proportionality objections are specific to each response.  For example, Bungie's "undue burden" objections explain that the

---

[4] Martineau's Request for Production No. 33 requests that Bungie "Produce all internal documents (including but not limited to meeting minutes, memos, and reports) discussing Bungie's history of copying artwork, including any analyses of patterns, systemic issues, or proposals for company-wide reforms to address these recurring issues."

request requires the production of irrelevant information or documents such as where a request is not limited to the accused "Red War" or "Curse of Osiris" campaigns or exceeds the temporal scope of the case. *See* Dkt. 50-2. For example, Request for Production No. 26 requests that Bungie "Produce all written, recorded, or electronically transmitted or stored communications (including emails, design briefs, internal reviews, or communications with Hasbro/NERF) concerning the alleged copying of Tofu_Rabbit's 2015 design for the Destiny 2 Ace of Spades NERF replica in 2024, and any related communications with Tofu_Rabbit (@Tofu_Rabbit)." Bungie specifically objected, in part, to Martineau's request as overly broad, unduly burdensome, oppressive, and disproportionate to the needs of the case because it seeks documents related to a toy replica of a *Destiny 2* weapon. Dkt. 50-2 at 24. As discussed *supra* at Section III(a), Martineau has only ever accused specific *narrative elements* in the original two *Destiny 2* campaigns, *i.e.*, the "Red War" and "Curse of Osiris" campaigns. This also supports the relevance objection Bungie also asserted in response to this request. *Id.* Each of Bungie's objections to Martineau's discovery requests are proper insofar as they are specifically tailored to each request, contrary to the characterizations made by Martineau in his Second Motion.

### IV.    Bungie's Responses to Martineau's Rule 30(b)(6) Deposition Notice Are Proper

Martineau served his 30(b)(6) Notice containing 37 topics on October 23, 2025. *See* Dkt. 50-3. On October 29, 2025, Bungie served its responses and objections to Martineau's 30(b)(6) notice, identified four corporate witnesses across 18 topics (and offered to meet and confer on 8 more topics) and provided Martineau with a list of dates for the deposition. Duvdevani Decl. ¶¶ 8, 10, Exs. B, D. Instead of meeting and conferring regarding Bungie's responses to the 30(b)(6) Notice, on November 3, 2025, Martineau's counsel informed Bungie that it no longer wished to proceed with the deposition and filed the Second Motion two days later. *See id.* ¶ 12, Ex. F.

### a. Martineau's Topics Concerning Infringement Comparisons and Analyses Are Improper (Topics 18, 27, and 32)

Martineau's Topic Nos. 18, 27, and 32 in his Rule 30(b)(6) deposition notice to Bungie seek corporate testimony regarding "[comparisons of] Destiny 2 lore with the work of Matthew Kelsey Martineau," "internal reviews or evaluations conducted by or on behalf of Bungie regarding the potential infringement of Martineau's work," and "analyses or other review regarding Martineau's Works conducted by or on Bungie's behalf."  Dkt. 50-3 at 17-18, 26-27, and 30.

Topic 18, which requires that Bungie prepare a witness to compare the works at issue in this case, incorrectly presupposes that the proper and relevant substantial or striking similarity analysis under U.S. copyright law is conducted through party testimony.  This is not so.  The factfinder—not a witness, expert or otherwise—must conduct the substantial similarity analysis via a side-by-side comparison between the protectable expression in the asserted and accused works.  *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 550 (5th Cir. 2015).

Further, Martineau's accusations that Bungie is attempting to "shield" crucial testimony that would otherwise be elicited by Topics 18, 27, and 32 by asserting attorney-client privilege objections is meritless.  Putting well established legal precedent emphasizing the sanctity of the attorney-client privilege aside, Bungie **has no knowledge about Martineau's asserted work** apart from what has been gathered from privileged communications with its counsel and what is contained in the operative pleadings, to which Martineau failed to attach his asserted work  This justifies its objections to providing a comparison or analysis of the works at issue based on attorney-client privilege.  Bungie is not required to waive attorney-client privilege, or prepare a witness to identify purported similarity (or lack thereof) between an asserted work and an accused work, merely because Martineau alleges that a forced comparison of the works by Bungie is

"essential" to its case. *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981) (the purpose of attorney-client privilege is to, "encourage full and frank communications between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice"). The factfinder, not the parties, are to conduct the substantial similarity analysis. *Nola Spice Designs, L.L.C.*, 783 F.3d at 550 (substantial similarity test "typically should be left for the factfinder") (quoting Peel & Co. v. Rug Mkt., 238 F.3d 391, 395 (5th Cir.2001)); *Sahuc v. Tucker*, 300 F.Supp.2d 461, 465 (E.D. La. 2004) *aff'd sub nom. Sahuc v. Mohiuddin*, 166 F. App'x 157 (5th Cir. 2006) (factfinder conducts substantial similarity test under a layperson standard). Moreover, Bungie's privilege objections are not an "obstruction" to discovery. Indeed, the attorney-client privilege is a well-established privilege designed to encourage candid communication between attorneys and clients and, here, Bungie properly invoked such privilege.

Finally, Martineau's Topics 18, 27, and 32 are improper insofar as they seek testimony about legal conclusions. *In re Teon Maria,* 2013 WL 5507286, at *4 (sustaining objections to 30(b)(6) deposition topics improperly drafted to require witness to testify about legal conclusions). On theme with the remainder of Martineau's Second Motion, Martineau fails to support his assertion of entitlement to Bungie's corporate testimony on these topics with legal precedent.

### b. Martineau Is Not Entitled To Information Related To Unrelated Third-Party Allegations of Infringement (Topics 30, 34-36)

Bungie also properly objected to Topics 30 and 34-36 in Martineau's 30(b)(6) Notice. As discussed *supra* at Section IV(b), information and documents which are entirely unrelated to the works accused in this case are irrelevant. *See Action Ink, Inc. v. Anheuser-Busch, Inc.*, 2012 WL 6673125, at *1 (E.D. La. Dec. 20, 2012) (upholding Magistrate Judge's denial of plaintiff's motion to compel discovery concerning unrelated trademark infringement claims against defendant as lacking relevance to instant dispute); *Compaq Computer Corp. v. Ergonome Inc.*, 2001 WL

34104827, at *1 (S.D. Tex. June 27, 2001) (denying motion to compel discovery concerning unrelated claims and past litigation in a copyright dispute); *see also Mollmann v. Zoetop Business Co., Ltd.*, 2023 WL 4291848, at *6 (C.D. Cal. Apr. 25, 2023) (finding discovery seeking documents about unrelated allegations of copyright infringement to be overbroad, irrelevant, disproportional to the needs of the case, and "little more than a burdensome fishing expedition"); *Art Attacks Ink, LLC v. MGA Ent., Inc.*, 2005 WL 8160189, at *5-6 (S.D. Cal. Dec. 27, 2005) (denying motion to compel and holding "that any documents and information other than those directly related to the [accused products] are irrelevant"). Topics 30 and 34-36 seek the same information as sought by each of Martineau's second set of discovery requests and thus are improper for the same reasons, namely, that none of the works referenced in these Topics relate to the accused campaigns in this case: "Red War" and "Curse of Osiris." Dkt. 50-3 at 29, 31-33. Martineau's Second Motion, again, provides no case law suggesting such information is otherwise relevant.

### c. Bungie's Objections to Martineau's 30(b)(6) Topics Concerning Legal and Factual Bases Are Proper (Topics 1, 2, 4, and 6)

Despite expressly acknowledging that Topics 1, 2, 4, and 6 are overbroad (Dkt. 50-1 at 11), Martineau contends that Bungie's objections to these topics are improper. That is incorrect. Topics 1, 2, 4, and 6 of Martineau's Rule 30(b)(6) notice expressly seek designation of a corporate witness testimony on the "factual and legal bases" for Bungie's defenses, assertions of non-infringement, and in support of any motions or pleadings Bungie has filed in this case. Dkt. 50-3 at 1-4 and 5-6. Martineau concedes that legal bases are improper subjects for a Rule 30(b)(6) deposition in his Second Motion, leaving the factual bases portion of Topics 1, 2, 4, and 6 at issue. Martineau further acknowledges that his use of the term "factual bases" in Topics 1, 2, 4, and 6 is overbroad by stating that such bases could be "narrowed through a subsequent meet and confer,"

which Bungie expressly offered in its responses to each respective topic.  Bungie expressly proposed meeting and conferring with Martineau on the proper scope for testimony regarding "factual bases."  *See* Dkt. 50-3 at 1-4 and 5-6 (Bungie's Responses to Topics 1, 2, 4, and 6).  Yet, as discussed *supra* at Section III, Martineau made no attempt to meet and confer with Bungie to discuss its responses despite its obligation to do so under both Rule 37 and Rule 30 before burdening the Court with its Second Motion.  Absent such a meet and confer, Bungie would be forced to blindly identify four or more corporate witnesses to be deposed on these topics in an effort to guess what information may be encompassed by Martineau's use of the admittedly broad term "factual bases."  This exercise would result in an undeniable burden on Bungie's witnesses who would have to spend hours preparing and sitting for a deposition.

### d. Bungie's Objections to "Discovery on Discovery" Are Proper (Topic 14)

Bungie properly objected to Topic 14 of Martineau's Rule 30(b)(6) deposition notice which inappropriately seeks "discovery on discovery."  Dkt. 50-3 at 12-13.  Topic 14 seeks Bungie's corporate testimony on "any documents responsive to discovery requests that are known to have existed but are no longer in Bungie's possession, custody, or control, including a description of contents, when last possessed, circumstances of disposal/destruction/loss, and current location/custodian if known."  *Id.*  "Discovery on discovery" is improper.  *See Slocum v. Int'l Paper Co.*, 2019 WL 8918747, at *2-3 (E.D. La. Mar. 15, 2019) ("'[T]here should be no discovery on discovery, absent an agreement between the parties, or specific, tangible, evidence-based indicia (versus general allegations of deficiencies or mere speculation) of a material failure by the responding party to meet its obligations.'") (quoting The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production, 19 Sedona Conf. J. 1, 118 at 123 (2018)); *see also Hermann v. Hewlett Packard Enter. Co.*, 2024 WL

4647715, at *5 (N.D. Tex. Oct. 31, 2024) ("'[D]iscovery on discovery' generally is not permitted 'unless a specific deficiency is shown in a party's production[.]'") (quoting *VeroBlue Farms USA Inc. v. Wulf*, 345 F.R.D. 406, 420 (N.D. Tex. 2021)).

Martineau's Second Motion attempts to clarify that Topic 14 is not seeking "discovery on discovery" by pointing to the language "documents that are *known* to have existed" (emphasis added). Dkt. 50-3 at 12-13. However, "known missing documents" is vague and overbroad in and of itself and requires further discussion with Martineau regarding the scope and relevance of the topic. Indeed, Bungie's counsel submits that Martineau's use of the term "known missing documents" in his Second Motion is unintelligible such that Bungie still cannot determine what information Martineau seeks to obtain through a deposition of Bungie's corporate witness on this topic. Nevertheless, despite such clarification being a proper subject of a Rule 37 conferral, to the extent Martineau's topic seeks corporate testimony regarding Bungie's vaulting of the accused campaigns(*see* Dkt. 11-3, 22-1, 26-3), Bungie avers that it had already designated a corporate witness to provide testimony on this subject before the Second Motion was filed. *See* 50-3 at 22-23 and 25-26.

## V.    Bungie Timely Updated Its Discovery Responses

Finally, the Second Motion's request to compel Bungie to amend its responses to Martineau's second set of discovery requests to remove privilege objections now understood to be inapplicable will be moot by the close of fact discovery. Bungie plans to serve amended responses before the close of discovery, upon substantial completion of its document production.

### VI.    Bungie—not Martineau—Is Entitled To Attorney's Fees Under Rule 37(a)(5)(B)[5]

Remarkably, Martineau also seeks an award of attorney's fees and costs incurred in bringing the Second Motion pursuant to Rule 37(a)(5)(A). That should be flatly rejected by the Court because black letter law precludes awards of attorney's fees to movants who fail to attempt in good faith to resolve a discovery dispute before filing a discovery motion. Fed. R. Civ. P. 37(a)(5)(A)(i) ("the court must not order this payment if: the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action"). There is no dispute that Martineau failed to do so, despite Bungie's proactive efforts. Thus, the Court should deny Martineau's request.

Indeed, it is Bungie, not Martineau that is entitled to attorney's fees because Martineau failed to meet and confer with Bungie to obviate the filing of this motion. Bungie is entitled to its attorneys' fees on this basis alone. *See Pride Centric Res., Inc. v. LaPorte*, No. CV 19-10163, 2021 WL 2579798 at *2 (E.D. La. June 23, 2021) (denying motion for reconsideration where plaintiff was ordered to pay defendant's attorney's fees after failing to meet its obligations to meet and confer in good faith in advance of filing its motion to compel). In *Pride Centric Res.*, the Court found a ten-minute phone call, after the motion to compel was initially filed, did not constitute meeting and conferring in good faith. Here, Martineau did not even attempt such a phone call. Martineau failed to meet and confer regarding both Bungie's responses to Martineau's discovery requests and 30(b)(6) Notice, despite Bungie having submitted timely responses to both.

---

[5] Martineau also seeks an award of attorney's fees and costs incurred in bringing the Second Motion pursuant to Rule 37(a)(5)(A) but ignores the well-established authority that attorney's fees cannot be awarded to movants who fail to attempt in good faith to resolve a discovery dispute before filing a discovery motion. Fed. R. Civ. P. 37(a)(5)(A)(i) ("the court must not order this payment if: the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action").

Bungie similarly made every effort to present a corporate witness in response to Martineau's 30(b)(6) Notice.  Martineau's failure to meet and confer on any of these points has necessitated extensive motion practice at the end of the discovery period, wasting valuable judicial and party time and resources.

## VII.    Conclusion

For the reasons stated above, Bungie's objection to Martineau's discovery requests should be sustained, and Martineau's untimely motion to compel Bungie's responses should be denied.

Dated: November 10, 2025

Respectfully submitted,

/s/ *Tamar Y. Duvdevani*
**DLA PIPER LLP (US)**
Tamar Y. Duvdevani (*pro hac vice*)
Jared Greenfield (*pro hac vice*)
1251 Avenue of The Americas, 27th Fl.
New York, New York 10020
Telephone: 212-335-4500
tamar.duvdevani@us.dlapiper.com
jared.greenfield@us.dlapiper.com

IRWIN FRITCHIE URQUHART MOORE & DANIELS, LLC
Darleene Peters (#25638)
Connor W. Peth (#39499)
Irwin, Fritchie, Urquhart & Moore, LLC
400 Poydras Street, Suite 2700
New Orleans, Louisiana 70130
Telephone: 504-310-2100
dpeters@irwinllc.com
cpeth@irwinllc.com

***Counsel for Bungie, Inc.***

19