# Exhibit C

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MATTHEW KELSEY MARTINEAU,<br><br>Plaintiff,<br><br>v.<br><br>BUNGIE, INC., a Delaware corporation; DOES 1-10, inclusive,<br><br>Defendants. | CIVIL ACTION NO.  2:24-cv-02387<br><br>JUDGE: Susie Morgan<br><br>MAG. JUDGE:  Michael B. North |

**NOTICE OF DEPOSITION OF BUNGIE, INC.**
**PURSUANT TO FED. R. CIV. P. 30(b)(6)**

**To:     Bungie, Inc., by and through its attorneys of record:**

DLA PIPER LLP (US)
Tamar Y. Duvdevani (pro hac vice)
Jared Greenfield (pro hac vice)
1251 Avenue of The Americas, 27th Fl.
New York, New York 10020
Telephone: 212-335-4500
tamar.duvdevani@us.dlapiper.com
jared.greenfield@us.dlapiper.com

and

IRWIN FRITCHIE URQUHART MOORE & DANIELS, LLC
Darleene Peters (#25638)
Connor W. Peth (#39499)
Irwin, Fritchie, Urquhart & Moore, LLC
400 Poydras Street,
Suite 2700
New Orleans, Louisiana 70130
Telephone: 504-310-2100
dpeters@irwinllc.com
cpeth@irwinllc.com

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, MATTHEW KELSEY MARTINEAU ("Martineau") will take the deposition of CORPORATE REPRESENTATIVE OF BUNGIE, INC. ("Bungie") upon oral examination before an officer authorized to administer oaths, beginning _____, _____, 2025 commencing at 9:00 a.m., at the offices of Irwin, Fritchie, Urquhart & Moore, LLC, 400 Poydras Street, Suite 2700, New Orleans, Louisiana 70130, or another mutually agreeable time and place, and continuing from day-to-day until completed or adjourned. Bungie shall designate one or more officers, directors, managing agents, or other person who consent to testify on its behalf. Martineau requests that Bungie set forth for each person designated the matters on which he/she shall testify at least one (1) day in advance of the deposition and notify Martineau accordingly. The deposition will be taken by audio, video and/or stenographic recording. The matters upon which examination are requested are set forth on Exhibit "A," attached hereto and made a part hereof for all purposes. Bungie is also required to produce all documents identified in Exhibit "B," attached hereto and made a part hereof for all purposes. You are invited to attend and examine.

**EXHIBIT "A"**

Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Bungie, must present for deposition the person(s) most knowledgeable of the following areas:

1. The factual and legal bases for any defenses that You have asserted in the Litigation including, without limitation, the allegations and defenses set forth in Bungie's Answer [Rec. Doc. 35.0].

2. The factual and legal bases for Your assertions that Bungie has not infringed any copyright owned or controlled by Martineau.

3. The factual and legal bases for any monetary damages that You claim are owed by Martineau in this Litigation.

4. The factual and legal bases in support of any pleadings (including, without limitation, any motion) that You have filed in the Litigation.

5. The factual and legal bases for all information, statements, and representations sworn to within any affidavits or declarations submitted by Bungie in support of its prior Motions to Dismiss in this Litigation, including the identity of the affiants, the procedures undertaken to verify facts therein, and the sources relied upon for such sworn statements.

6. The factual and legal bases that You have asserted in any motion that Bungie has filed in the Litigation.

7. Your responses to any of the Interrogatories, Requests for Production, and Requests for Admissions propounded by Martineau in this Litigation.

8. Any documents produced by Bungie in this Litigation.

9. Any documents produced by Matthew Kelsey Martineau in this Litigation, including but

not limited to his work.

10. Your efforts to search for and locate documents and information responsive to any Interrogatories, Requests for Production, and Requests for Admissions propounded by Martineau in this Litigation.

11. The identity of the Person(s) responding to the Interrogatories and Requests for Production, including those who furnished information or were consulted in drafting the responses.

12. The identity of the Person(s) with knowledge regarding writing and development of the lore within the Destiny 2 seasons.

13. The identity of all witnesses You will or may call at trial or any hearing, and the facts about which they are anticipated to testify.

14. Any documents responsive to discovery requests that are known to have existed but are no longer in Bungie's possession, custody, or control, including a description of contents, when last possessed, circumstances of disposal/destruction/loss, and current location/custodian if known.

13. Bungie-Activision Publishing Agreement and Destiny Game Series Planning: The facts and circumstances surrounding the execution and terms of the Software Publishing and Development Agreement effective as of April 16, 2010, between Bungie, LLC and Activision Publishing, Inc.. This includes the planning, scheduling, and contemplation of the series of interactive entertainment software products known collectively as the "Destiny Games," specifically including "Destiny Game #1," "Destiny Game #2," "Destiny Game #3," and "Destiny Game #4". Bungie must specifically address the planning for *Destiny Game #2*.

III. Destiny 2 Development and Infringement

14. The facts and circumstances surrounding the initial creation and development of *Destiny 2* and the timeline for its creation and release.

15. The identities of all individuals responsible for initial creation and development of *Destiny 2* and all subsequent seasons.

16. The facts and circumstances surrounding all public statements, representations, endorsements, or acknowledgments made by Bungie or its representatives relating to the Destiny 2 lore.

17. All Destiny 2 lore that Bungie or its representatives have publicly endorsed.

18. Bungie should be prepared to discuss and compare the Destiny 2 lore with the work of Matthew Kelsey Martineau.

19. The facts and circumstances related to conception and development of the following content appearing in *Destiny 2* including, without limitation, the individual(s) that you allege are responsible for creation or authorship of the lore.

20. The individuals involved in the writing and development of *Destiny 2* lore from its inception, including all stages of initial creation, production, and updates.

21. The individuals involved in the writing and development of *Destiny 2* from its inception to its current playable configuration.

22. Seasonal Content**:** A detailed description of the creative process for each season of *Destiny 2*, including the identity(ies) of the person(s) who conceived of each season, the date(s) of conception, the creator or writer of each season, and the date(s) of creation.

23. When, why, and how each season of *Destiny 2* that has been vaulted was vaulted, including the decision-making process behind the vaulting.

24. All public representations made by You regarding the vaulting of any *Destiny 2* seasons.

25. A description of the reasons for the alleged incompatibility of the original code of *Destiny 2* with *Destiny 2*'s current operational framework(s), including any technical or design changes that contributed to this alleged incompatibility.

26. The current operational framework of *Destiny 2* and how it allegedly differs from the previous operational framework(s) of *Destiny 2*.

27. All internal reviews or evaluations conducted by or on behalf of Bungie regarding the potential infringement of Martineau's work.

28. The process Bungie uses to ensure that its video games do not infringe on the copyrights of third parties, including any policies, procedures, or training implemented to prevent such infringement.

29. A list and description of all measures taken by Bungie to verify the originality of the content within *Destiny 2* and to ensure compliance with copyright laws before and after the release of the game.

30. Any instances where Bungie has received notifications or claims of copyright infringement regarding *Destiny 2* and describe how each was addressed or resolved.

31. All communications and discussions with any individual or entity regarding Martineau and/or Martineau's Works.

32. Any and all analyses or other review regarding Martineau's Works conducted by or on Bungie's behalf.

   IV. Financial and Business Data (Based on Source 1, Topic 6)

33. Your total units sold or licensed, total gross revenues, gross profits, and cost of goods and/or services sold or licensed, as well as all of Your forecasts of future gross and net

profits from sales or rentals of *Destiny 2*.

V. Infringement Admissions

34. Xivu Arath Art Incident**:** Identification of all individuals involved in the process of selecting, creating, reviewing, and approving the visual assets for the *Destiny 2: The Witch Queen* trailer released in 2021, specifically those assets incorporating the image of Xivu Arath, and description of their knowledge regarding the origin of that specific Xivu Arath image.

35. Any instances where Bungie has received notifications or claims of copyright infringement regarding *Destiny 2* and describe how each was addressed or resolved.

36. Marathon/ANTIREAL Incident**:** Identification of any individuals involved in the creation or inclusion of artwork in *Marathon's* in-game environments and promotional materials that incorporated or was derived from ANTIREAL's original artwork and logo from 2017, including their roles and dates of employment with Bungie.

37. Social Media Accounts and Content**:** Identification of each social media account operated by or on behalf of Bungie, Inc. concerning *Destiny* and/or *Destiny 2*, including platform name, account name, handle, URL, date of creation, business purpose, and job titles/roles of individuals responsible for management, and the content on those platforms.

**EXHIBIT "B"**

Further, Bungie, shall produce the following documents and/or things to the Plaintiff through his attorney prior to the date and time specified for the above-noticed deposition unless already produced.

1. Financial Data (Sales & Revenue)**:** All documentation reflecting monthly sales and revenue data in dollars, for *Destiny 2* for the years 2017 through the present.

2. Financial Data (P&L)**:** Detailed annual profit/loss statements or similar documentation for Bungie, Inc., for the years 2017 through the present, specifying costs of goods and/or services sold in connection with *Destiny 2*.

3. Financial Data (COG/COS): All documentation identifying what Bungie, Inc. believes to be costs of goods and/or services sold, including, but not limited to, materials, direct labor, and overhead components, for *Destiny 2* for the years 2017 through the present.

4. Third-Party Communications (Infringement): All written, recorded, or electronically transmitted or stored communications between You and any third-party to the Lawsuit regarding any alleged copyright infringement by Bungie, Inc.

5. Interrogatory Support Documents: Any and all documents identified in response to any Interrogatory.

6. Defense Support Documents: All documents you intend to use to support your defenses against the allegations of copyright infringement asserted by Martineau.

7. Response Preparation Documents: All documents referenced or utilized while preparing responses to Martineau's interrogatories, particularly those relating to the alleged infringement of Martineau's work.

8. Destiny 2 Seasons Development Materials: For any seasons of *Destiny 2* that cannot be produced, provide all related documents, including but not limited to scripts, rough drafts, and lore content.

9. Right to Use Martineau's Work: Documents related to your right to use any elements of Martineau's works that are alleged to be infringed upon by *Destiny 2*.

10. Communications with Martineau: All communications with Martineau about the works at issue in this Lawsuit, including those relating to claims of copyright infringement by Bungie, Inc.

11. Vaulting Notices: Copies of any vaulting notices sent to online service providers regarding any seasons of *Destiny 2*.

12. Operational Framework Abandonment: All documents and communications related to the decision to abandon *Destiny 2's* original operational framework, detailing the specific shortcomings or limitations that led to its replacement.

13. Vaulting Decision Documents: All documents and communications related to Bungie's decision to vault content in *Destiny 2*, including any internal discussions, analyses, or evaluations that explain the reasons for vaulting, the decision-making process involved, and any public statements or representations made regarding the vaulting process.

14. Marathon Art Review: All reports, findings, and documentation from the "thorough review of our in-game assets, specifically those done by the former Bungie artist" that Bungie is conducting or has conducted regarding the *Marathon* art theft controversy, including documents detailing the scope and methodology of this review, status reports or updates on the review's progress, any findings or conclusions reached as a result of this review, and documentation of any actions taken or remediation plans implemented based

on the review's findings.

15. Mal E/Xivu Arath Communications: All written, recorded, or electronically transmitted or stored communications (including emails, chat logs, meeting minutes, or social media direct messages) between Bungie and Mal E (@relay314) concerning the alleged use of Mal E's Xivu Arath art in the *Destiny 2: The Witch Queen* trailer in 2021, and any related internal communications discussing this incident.

16. Mal E Internal Reviews: All documented internal reviews or evaluations conducted by or on behalf of Bungie regarding the alleged use of Mal E's Xivu Arath art in the *Destiny 2: The Witch Queen* trailer in 2021. Include the findings of these reviews, any conclusions drawn regarding the use of the art, and any corrective actions or policy adjustments made as a direct result of this incident.

17. Julian Faylona External Vendor: All documents identifying or relating to the "external vendor" referenced by Bungie as having mistakenly used Julian Faylona's artwork as a reference for a *Destiny 2* cutscene in 2023, including contracts, agreements, correspondence, contact information, vendor profiles, work orders, and any other documents reflecting the vendor's identity, contact details, and the nature of their contractual relationship with Bungie regarding art creation for *Destiny 2* cutscenes.

18. Marathon Post-Controversy Checks: All documents relating to the "stricter checks to document all artist contributions" implemented by Bungie since May 2025 following the *Marathon* controversy, including policy documents, procedures, training materials, implementation plans, enforcement protocols, oversight assignments, and any documents describing how these checks are intended to prevent future instances of unauthorized art usage.

19. ANTIREAL Social Media/Knowledge: All documents identifying individuals at Bungie, including *Marathon* art director Joseph Cross and any other representatives, who were following artist ANTIREAL's account prior to May 2025, including social media account records, internal communications discussing ANTIREAL's work or designs, correspondence or communications between any Bungie personnel and ANTIREAL regarding her designs or their use in *Marathon*, and any documents reflecting knowledge or awareness of ANTIREAL's work by Bungie employees or representatives.

20. Julian Faylona Communications: All written, recorded, or electronically transmitted or stored communications (including, but not limited to, emails, chat logs, text messages, instant messages, social media messages, or internal memos) between Bungie, its "external vendor," and Julian Faylona (@ELEMENTJ21) concerning the alleged use of Julian Faylona's artwork in the *Destiny 2 Season of the Deep* cutscene in 2023 and the promised compensation.

21. Julian Faylona Compensation Records: All documents (including payment records, settlement agreements, or formal apologies) that demonstrate the compensation and credit provided or promised to Julian Faylona for the use of their artwork in the *Destiny 2 Season of the Deep* cutscene in 2023.

22. Tofu_Rabbit Communications: All written, recorded, or electronically transmitted or stored communications (including emails, design briefs, internal reviews, or communications with Hasbro/NERF) concerning the alleged copying of Tofu_Rabbit's 2015 design for the *Destiny 2 Ace of Spades* NERF replica in 2024, and any related communications with Tofu_Rabbit (@Tofu_Rabbit).

23. Tofu_Rabbit Resolution Documents: All documents (including internal investigation

reports, design documents, and any agreements for compensation or credit) related to the resolution of the alleged copying of Tofu_Rabbit's design for the *Ace of Spades* NERF replica in 2024.

24. ANTIREAL Communications: All written, recorded, or electronically transmitted or stored communications (including emails, chat logs, and internal memos) between Bungie and ANTIREAL (@antire.al) or related internal discussions, from 2017 to the present, concerning the alleged copying of ANTIREAL's 2017 artwork for *Marathon's* in-game environments and promotional materials.

25. Marathon Art Review/Remediation (Revised): All reports, findings, and documentation from the "thorough review of our in-game assets, specifically those done by the former Bungie artist" that Bungie is conducting or has conducted regarding the *Marathon* art theft controversy, including any revised asset lists or remediation plans.

26. Julian Faylona Credit/Compensation Efforts (Revised): All documents relating to Bungie's efforts to credit and compensate Julian Faylona for the use of his artwork in the *Destiny 2 Season of the Deep* cutscene in 2023, including internal documents, status of compensation, and assessments regarding the resolution.

27. All internal documents outlining Bungie's policies, procedures, and training related to verifying the originality of content and preventing copyright infringement from third-party artists, including any revisions or new documented policies or procedures implemented after admitting to multiple incidents of unauthorized art copying.

28. All internal documents outlining Bungie's policies, procedures, and training related to verifying the originality of content and preventing copyright infringement from third-party artists, including any revisions or new documents implemented since specifically

addressing lessons learned from prior alleged art copying incidents.

29. All internal documents (including but not limited to meeting minutes, memos, and reports) discussing Bungie's history of copying artwork, including any analyses of patterns, systemic issues, or proposals for company-wide reforms to address these recurring issues.

30. Bungie-Activision Software Publishing and Development Agreement: Produce a complete copy of the Software Publishing and Development Agreement entered into between Bungie, LLC and Activision Publishing, Inc. effective as of April 16, 2010, concerning the "Destiny Property". This production must include the entire Agreement and all referenced exhibits and attachments, specifically those related to *Destiny Game #2*, including, but not limited to:

   o   Exhibit A: Concept document for *Destiny Game #1*.

   o   Exhibit C: Native Release Plan for *Destiny Games #1* and *#2*.

   o   Exhibit E: Payment Schedule/Milestone Schedule.

   o   Exhibit F: Baseline framework for analyzing the SKU-plan.

   o   Exhibit G: Key members of Licensor's development team.

   o   Exhibit I: Operating Income Cost Centers (for illustrative purposes).

   o   Exhibit J: Royalty Accounting Illustration.

   o   Exhibit K: Side letter from Class B Members.