## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MATTHEW KELSEY MARTINEAU, *Plaintiff*, | |
| v. | CIVIL ACTION NO.: 2:24-cv-02387 |
| | JUDGE SUSIE MORGAN |
| BUNGIE, INC., a Delaware Corporation; DOES 1-10, inclusive, | |
| *Defendants*. | MAGISTRATE JUDGE MICHAEL B. NORTH |

## DEFENDANT BUNGIE, INC.'S OPPOSITION TO PLAINTIFF MATTHEW KELSEY MARTINEAU'S MOTION FOR LEAVE TO FILE A SECOND SUPPLEMENTAL AND AMENDED COMPLAINT

Defendant Bungie, Inc. ("Bungie") by and through its attorneys, respectfully submits the following opposition to Plaintiff Matthew Kelsey Martineau's ("Martineau") November 3, 2025 Motion for Leave to File a Second Supplemental and Amended Complaint (Dkt. 48) ("Motion").

### I.        Introduction

The deadline for the parties to amend their pleadings by leave of Court passed on March 3, 2025—*i.e.*, over **eight months** ago.  Dkt. 16 at 2.  The Court's Scheduling Order is clear: the deadlines it set forth, including that by which to amend the pleadings, "are not 'suggestions' but <u>firm</u> deadlines which will be strictly enforced."  *Id.* at 1 (emphasis in original).  Moreover, the Court warned Martineau at the May 14, 2025 Status Conference that it did not wish to see an untimely motion for leave to amend, and its Scheduling Order specifically cautioned counsel that it would not grant motions continuing these firm deadlines "except under rare and extraordinary circumstances."  *See* Decl. of Tamar Y. Duvdevani ("Duvdevani Decl.") at ¶ 4; Dkt. 16 at 1.

Martineau's belated Motion does not demonstrate the requisite good cause under Rule 16(b) to modify the scheduling order, such as the "rare and extraordinary circumstances" required

by this Court.  Rather, Martineau's Motion belatedly attempts to patch critical holes in his claims revealed through fact and expert discovery.  Martineau's purported reason for the amendment – claims of newly discovered infringing works – rings hollow: six of the seven newly accused *Grimoire Anthology* volumes were published before Martineau filed the instant action, and all seven volumes were published before Martineau filed his First Amended Complaint ("FAC").  Thus, these are **not** "newly discovered facts" as Martineau claims, but ones long available and easily discoverable to Martineau had he or his counsel exercised due diligence in investigating and bringing his claims.  Martineau's attempt to blame Bungie for his own lack of diligence is unfounded.  Martineau's proposed Second Amended Complaint ("Proposed SAC") also appears to accuse the entirety of Bungie's seven-volume *Grimoire Anthology* series without sufficiently identifying how each volume is infringing, creating futility issues and failing to provide Bungie with reasonable and fair notice of his proposed new claims.

Martineau's Motion omits several other proposed substantive amendments contained in Martineau's Proposed SAC that have nothing to do with the newly accused *Grimoire Anthology*.  Martineau's moving papers repeatedly represent that the amendment is being made only "to assert a new claim for copyright infringement based upon Bungie's *Grimoire Anthology*," justifying the delay in bringing the Motion due to Bungie's purported "fail[ure] to disclose the existence of the *Grimoire Anthology* in response to Plaintiff's written discovery."  Dkt. 48-1 at 2, 4-5.  Likewise, Martineau's counsel emailed counsel for Bungie to ask whether it would consent to the Motion and represented that "[t]he new allegations relate to infringement of Mr. Martineau's copyrighted works by Bungie's multi-volume publication 'The Grimoire Anthology.'"  Duvdevani Decl. ¶ 7, Ex. B.  However, as the attached redline comparison illustrates, Martineau failed to identify the numerous other substantive amendments he made that are entirely unrelated to the purportedly

new claim of infringement. *Id.* ¶ 8, Ex. C.  Martineau has tried to use this Motion as a vehicle to sneak in allegations and "fix" the significant issues with his claim.

It appears that these other amendments, on which Martineau's Motion is entirely silent, attempt to save his alleged infringement claim against Bungie, following his fatal discovery admissions.  Specifically, during Martineau's October 29, 2025 deposition (which took place a few hours before Martineau sent the request to consent to this Motion), Martineau testified about his allegations that Bungie accessed his blog posts and copied therefrom.  Martineau admitted under oath that he had **<u>removed</u>** from public view all asserted blog posts by the **end of 2014**, despite the fact that his entire theory of access—and therefore unauthorized copying—depended on his allegations that *Destiny 2* game developers, supposedly desperate for a new storyline, searched for and located Martineau's asserted blog posts during development of *Destiny 2* in **2016 and 2017**.  Dkt. 24 at ¶¶ 41-42, 49, 59-60.  Martineau's honest testimony about delisting his posts long before that time frame flatly contradicts the FAC's allegations that Bungie purportedly accessed and copied his work.  And because access is a key element of copyright infringement, Martineau's concession that it was **impossible** for Bungie to access his work during the development of *Destiny* 2 dooms his claim.

For example, Martineau, realizing the access allegations in his FAC are impossible, sneaks in a seemingly small yet substantively critical edit – as seen below in red, Martineau seeks to delete the "Destiny 2" qualifier where he alleges Bungie's development team accessed his work.  This is because Martineau admitted that his blog was private by the time *Destiny 2* development began. In doing so, Martineau looks to expand the "pool" of possible persons who could have allegedly accessed his blog from only *Destiny 2* developers, as alleged in the FAC, to *any* Bungie developers. Similarly, the proposed unmentioned amendment in blue directly expands his alleged window of

access from the sixteen short months alleged in the FAC (Dkt. 24 ¶ 42), to any time prior to *Destiny 2*'s release.

> ~~Martineau's complaint itself has failed to even ~~allege~~ that Destiny 2~~
>
>         ~~51~~52.  Members of Bungie's ~~Destiny  2~~ development team thus had the technical
>
> expertise and motivation to access Martineau's work via the well-known and publicly
>
> available WordPress online platform, whether during the development of Destiny 2 or earlier.

Duvdevani Decl. ¶ 8, Ex. C ¶ 52.  Martineau did not learn anything via discovery to justify these undisclosed edits – indeed, discovery only negated Martineau's access theory.  Bungie has very serious concerns with this dilatory and prejudicial conduct.  Martineau's undisclosed material edits, more fully illustrated in the attached redline, provide an additional reason why the Motion should be denied.

Finally, and contrary to Martineau's conclusory and unsupported statements, adding new claims of infringement against completely new works after close of discovery, after expert disclosures, and on the eve of dispositive motion deadlines creates severe prejudice to Bungie, which informed Martineau on October 29, 2025 of its intent to move for summary judgment by November 18.  Duvdevani Decl. ¶ 6.  The Court should reject this dilatory eleventh-hour tactic and deny Martineau's Motion.

## II.    Law and Argument

### a.  Legal Standard

The Fifth Circuit has ruled that "Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired.  Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's

decision to grant or deny leave." *S&W Enters., L.L.C. v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 536 (5th Cir. 2003). To determine if good cause exists, courts generally consider four factors: "'(1) the explanation for the failure to [timely move for leave to amend]; (2) the importance of the [amendment]; (3) potential prejudice in allowing the [amendment]; and (4) the availability of a continuance to cure such prejudice.'" *Id.* (quoting *Reliance Ins. Co. v. La. Land & Exploration Co.*, 110 F.3d 253, 257 (5th Cir. 1997). However, "[t]he most important factor in the good-cause analysis is the moving party's diligence" under the first factor. *Le-Vel Brands, LLC v. DMS Nat. Health, LLC*, 2022 WL 949952, at *3 (E.D. Tex. Mar. 28, 2022) (collecting cases). These factors are not exhaustive. *See, e.g. Harris v. State Farm Mut. Auto. Ins. Co.*, 2022 WL 4120620, at *4 (D. Colo. Sept. 9, 2022) (considering plaintiff's misrepresentation of his amendment under the Rule 16 good cause standard).

If a movant can demonstrate good cause, Rule 15(a) allows courts to grant leave to amend "when justice so requires." However, courts may consider numerous factors when considering a motion for leave to amend under Rule 15(a), including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *Ducharme v. Crescent City Deja Vu, L.L.C.*, 2019 WL 13273278, at *4 (E.D. La. May 15, 2019) (quoting *Schiller v. Physicians Res. Grp. Inc*., 342 F.3d 563, 566 (5th Cir. 2003)).

### b.  Martineau Has Not Shown Good Cause for Leave to Re-Amend

Martineau's Motion does not show good cause for leave to reamend. The Motion was unduly delayed via a lack of diligence (Factor 1, the most important factor), and to grant it would cause significant prejudice to Bungie (Factor 3). Any continuance would not only fail to cure the

prejudicial extra cost and burden required for Bungie to engage in fact and expert discovery regarding the additional claim (Factor 4), it would also needlessly delay trial and/or deprive Bungie the opportunity to seek summary judgment.  Finally, to the extent the Court finds Martineau's amendment important to his claims (which it should not, in light of his representation that he would not need an extension of discovery for a claim on an entirely separate work) (Factor 2), the Court should find that the other three factors clearly favor Bungie and outweigh the importance factor.

### i.    Factor 1: Martineau Has Not Explained Why He Failed to Timely Move for Leave to Amend

#### 1.    Martineau Could Easily Have Discovered the *Grimoire Anthology* with Due Diligence

The Court should not grant Martineau leave to amend his FAC to bring claims against the *Grimoire Anthology* because he has not established *any* diligence.  Martineau had two chances to include the *Grimoire Anthology*: first in his original Complaint (Dkt. 1) filed on October 2, 2024, and then again in his FAC (Dkt. 24) filed on March 24, 2025.  Six of the seven *Grimoire Anthology* volumes, including the two volumes that Martineau specifically identifies in his proposed SAC,[1] were publicly available for sale on Bungie's official online store and on Amazon's website when Martineau filed his original Complaint, and all seven volumes were publicly available by the time Martineau filed his FAC.  *See* Duvdevani Decl. ¶¶ 9-16, Exs. D-K.

A party "cannot show good cause for failing to comply with the scheduling order [if] he could have discovered" the basis for the claims he seeks leave to add "through his own diligence." *Ethridge v. Samsung SDI Co*., 2023 WL 1974203, at *7 (S.D. Tex. Jan. 20, 2023) (denying motion for leave).  Here, Martineau could have easily identified the basis for his claims against the

---

[1] *Volume I: Dark Mirror* and *Volume V: Legions Adrift* (Dkt. 48-4 ¶¶ 139-140, 146-147, 193, 266) were published on December 25, 2018 and March 14, 2023, respectively, and were available on both Bungie's official online store and on Amazon well before Martineau filed either complaint.  *See* Duvdevani Decl. ¶¶ 9, 13 Exs. D, H.

*Grimoire Anthology* via simple searches on Amazon or the Bungie store website, or by simply reading the *Destiny* materials and resources that he was already aware of and that were provided to him expressly for the purpose of further researching *Destiny 2* for this litigation. *See id.* (finding plaintiff "has not demonstrated the requisite diligence . . . the basis for [the claim he seeks to add] was available through basic searches of Amazon's own webpage"); *Ducharme,* 2019 WL 13273278, at *5 ("[When a party] is in possession of the information that forms the basis of the later motion to amend at the outset of the litigation, the party is presumptively not diligent.").

Indeed, Martineau has demonstrated an awareness of *Destiny*-related media throughout this litigation. For example, Martineau is familiar with Destinypedia.com, which is a comprehensive online wiki and encyclopedia dedicated to the *Destiny* Franchise. In his opposition to Bungie's first motion to dismiss and in a later motion to strike, Martineau directly quoted the Destinypedia website. *See* Dkt. 21 at 24 n.36; Dkt. 29-1 at 7 n.5 (quoting Destinypedia). Additionally, Martineau admitted at deposition that between October 2024 and June 2025, he asked a friend that often played *Destiny 2* to provide him with research links regarding the "lore" of the *Destiny* Franchise. *See* Duvdevani Decl. ¶ 6, Ex. A t 111:5-114:9. This friend provided Martineau with several links regarding *Destiny 2* lore, including links to the "Cabal" page of Destinypedia, which directly points readers to two *Grimoire Anthology* volumes. *See* Duvdevani Decl. ¶ 17, Ex. L at 14; ¶ 18, Ex. M; *see also id*. ¶ 19, Ex. N at 47-48 (stating that the Cabal appears in "*Destiny Grimoire Anthology, Volume II*" and the "*Destiny Grimoire Anthology, Volume V*"). Martineau's original Complaint and FAC also both allege that purportedly infringing content can be found on Bungie's social media accounts. *See* Dkt. 1 ¶ 81; Dkt. 24 ¶ 122. But the *Grimoire Anthology* has *also* been spotlighted on Bungie's social media accounts and therefore was easily discoverable when Martineau investigated Bungie's accounts in connection with his allegations. *See* Duvdevani

Decl. ¶¶ 20-21, Exs. O-P.  Martineau does not attempt to explain why a diligent investigation would not have revealed the existence of the *Grimoire Anthology* sooner.  *See Wright v. United Parcel Serv. Inc. (Ohio)*, 2020 WL 13682798, at *1 (W.D. La. Jan. 29, 2020) (denying motion for leave to amend where "[plaintiff] did not give any reason why a diligent investigation could not have discovered her potential claim in a timely fashion").  That alone is reason to deny his Motion.

Martineau's Motion claims that "[s]ince learning of the existence of the Bungie work in early October, Plaintiff and his counsel have carefully reviewed the multi-volume *Grimoire Anthology* to aggressively investigate the basis for the allegations set forth in the proposed amendment" and that therefore "Plaintiff and his counsel have acted diligently and have not caused any undue delay in filing the amended pleadings."  Dkt. 48-1 at 4.  But that is irrelevant because it is not the correct legal standard.  *See Ethridge*, 2023 WL 1974203, at *7 ("When [the plaintiff] actually learned about the basis for [the claim] is irrelevant.").  "What matters is when [Martineau] 'could' or 'should' have discovered the basis for the claim."  *Id.*; *see also Villarreal v. Johnson*, 2018 WL 6272046, at *4 (N.D. Tex. Oct. 31, 2018), *report and recommendation adopted*, 2018 WL 6267658 (N.D. Tex. Nov. 30, 2018) (denying motion for leave to amend where plaintiff "through the exercise of due diligence should have been aware of the above information prior to the expiration of the…amendment deadline").  Because the movant's diligence is the most important factor in the good-cause analysis, this factor heavily favors Bungie.  *See Le-Vel Brands*, 2022 WL 949952, at *3.

### 2.  Bungie Did Not Impede Discovery of the *Grimoire Anthology*

Martineau's attempt to shift the blame to *Bungie* for his undue tardiness is factually inaccurate and a red herring.  Contrary to Martineau's cherry-picked and unsupported arguments,

no discovery request propounded by Martineau "reasonably encompassed" the *Grimoire Anthology*, nor required Bungie to disclose its existence. *See* Dkt. 48-1 at 5.

Specifically, the Motion first identifies Martineau's Request for Production No. 4, which sought "[a] copy of each different advertisement or other promotional material referencing *Destiny 2* ever published, broadcast, displayed, or distributed in any manner by or on behalf of Bungie, Inc." Dkt. 48-1 at 5; Dkt. 41-6. But the *Grimoire Anthology* is *not* an advertisement or promotional material for *Destiny 2*: it comprises seven discrete works that are each offered for sale separately and apart from the *Destiny 2* game. Its volumes do not persuade or encourage anyone to play *Destiny 2* or purchase *Destiny 2* content; rather, as compendiums of in-game lore, they are available for purchase and generally are only valuable or interesting to people who have already played *Destiny* and/or *Destiny 2*. This is reflected by the dedication of each volume, which reads: "To our community, [y]ou've become the main characters in the stories we tell. You've filled our worlds with your light and your friendship. Thank you for your passion for our games and for each other. Most of all, thank you for playing." Duvdevani Decl. ¶ 22, Ex. Q. And, five of the seven anthology volumes (including the most commonly identified volume in Martineau's Proposed SAC, *Volume V: Legions Adrift*) were published *after* the accused "Red War" and "Curse of Osiris" campaigns were entirely removed from public access in November 10, 2020, and thus could not logically have been intended as advertising or promotion of the accused campaigns. *See id.* ¶ 11, Ex. F (showing *Volume III: War Machines* was published on December 29, 2020).

Second, the Motion identifies Martineau's Request for Production No. 9, which sought "[c]opies showing all seasons of *Destiny 2*." Dkt. 48-1 at 5; *see also* Dkt. 41-6. Although Bungie has objected to this Request as vague and confusing for its failure to define "copies" and "seasons," Bungie's best guess is that Martineau intended to request access to all *Destiny 2* expansionary

campaigns, regardless of their relevance to Martineau's far narrower claims.[2]  The *Grimoire Anthology* volumes, which are distinct literary works, simply cannot be construed as "copies" of any "season" of *Destiny 2*, which is a video game and therefore an audiovisual work.  Martineau provides no case law establishing otherwise.  Rather, as lore compendiums, each *Grimoire Anthology* volume compiles material relating to one particular facet of the *Destiny* Franchise universe, from across all of the franchise.  As such, the volumes do not even pertain to any one singular *Destiny 2* season (or even just to *Destiny* 2), much less can they feasibly be considered copies, replicas, or a "repackaging" of such.  *See* Dkt. 48-1 at 5 (incorrectly characterizing the *Grimoire Anthology* as "repackag[ing] and expand[ing] upon the 'vaulted' narrative content").

Lastly, the Motion identifies Martineau's Request for Production No. 10, which sought "[f]or any seasons of Destiny 2 that cannot be produced … all related documents, including but not limited to scripts, rough drafts, source codes, and any other materials that detail the development and content of all *Destiny 2* seasons."  Dkt. 48-1 at 5; *see also* Dkt. 41-6.  As Martineau's counsel did not meaningfully confer with Bungie on the scope of this Request, Bungie's best guess is that this Request seeks development materials originating during the creation or development of all *Destiny 2* campaigns, which *also* reflect their content – presumably intended as a sort of substitute for a campaign's content where the campaign itself cannot be produced.  Bungie objected to this Request (Dkt. 41-6), and at no point during the parties' meet and confer did Martineau's counsel indicate that this Request was intended to encompass any documents other than development materials.  *See id.* ¶ 5.  As the very first *Grimoire Anthology* volume was published on December 25, 2018—more than a year after the September 6, 2017 release of *Destiny 2* and the "Red War" campaign and the December 7, 2017 release of the "Curse

---

[2] Martineau's counsel refused to clarify this request in the parties' September 3, 2025 meet and confer.

of Osiris" campaign—it is not reasonable to construe a Request expressly seeking video game development materials like scripts, rough drafts, and source codes, as demanding that Bungie produce separate, non-video game works created after the development of the accused campaigns, like the *Grimoire Anthology*. And again, Martineau's tortured construction of his own discovery requests is unsupported by *any* case law.[3]

In sum, to distract from his own lack of diligence in investigating publicly available materials, including the *Grimoire Anthology*, prior to the deadline to amend, Martineau's Motion misconstrues the nature of his own discovery requests to incorrectly shift the blame to Bungie. The Court should reject this attempt to recast the *Grimoire Anthology* as responsive to objected-to requests that on their face sought advertising and promotional materials, copies of *Destiny 2* expansionary campaigns, and video game development materials. Indeed, even after Martineau purportedly discovered the existence of the *Grimoire Anthology* in early October, his counsel never alerted Bungie that its discovery responses were purportedly deficient for failing to identify the separate literary works. That did not happen until Martineau filed this Motion on November 3, 2025 as justification for his lack of diligence. *See* Duvdevani Decl. ¶ 5.

## ii. Factor 3: Bungie Will Be Unduly Prejudiced if the Motion is Granted

The third factor of the good cause analysis looks at potential prejudice in allowing the amendment. *S&W Enters.,* 315 F.3d at 536. There is no question that granting the Motion would

---

[3] Moreover, even if the *Grimoire Anthology was* responsive to a discovery request on its face, which it is not, Bungie lodged scope and time objections in response to the enumerated requests that would have excluded the *Grimoire Anthology* from responsiveness anyway. Specifically, Bungie's objections limited the substantive scope of Martineau's requests to the "Red War" and "Curse of Osiris" *Destiny 2* campaigns actually accused in Martineau's FAC, and limited the temporal scope of the requests to February 21, 2013 through November 10, 2020—*i.e.*, from the date that Martineau published the first writing within his asserted collective work, to the date the accused campaigns were removed from *Destiny 2* and no longer publicly accessible. Dkt. 41-6. As explained in Bungie's opposition to Martineau's pending motion to compel, Martineau refused to meaningfully meet and confer on Bungie's scope and time limitations, forcing an impasse. *See* Dkt. 49 at 4, 13. Thus, Bungie's time and scope objections continue to stand.

prejudice Bungie. Martineau set this Motion for submission on November 19, 2025, and oral hearing is set for November 20, 2025. Dkts. 48, 52. Yet, summary judgment motions are due before those dates on November 18, 2025. This puts Bungie in an impossible position, as Bungie must either move for summary judgment now on Martineau's newly proposed claim – without an opportunity to investigate the new claim through discovery – or forfeit the opportunity to do so. These threatened deprivations to Bungie are unduly prejudicial. *See, e.g.*, *Ducharme v. Crescent City Deja Vu, L.L.C.*, 2019 WL 13273278, at *6 (denying motion for leave to amend where defendants' summary judgment motion was pending); *Villarreal*, 2018 WL 6272046, at *5 (same). Indeed, the Fifth Circuit has ruled that a plaintiff's attempt to raise new theories of recovery by amendment after the defendant has already filed a motion for summary judgment must be more carefully scrutinized. *Parish v. Frazier*, 195 F.3d 761, 764 (5th Cir. 1999) (upholding denial of motion to amend).

Granting Martineau's motion would also deprive Bungie of the ability to probe the new claim through fact and expert discovery. Discovery closed on November 10, 2025, Bungie has already deposed Plaintiff, and expert reports have already been exchanged. Dkt. 16 at 9. If the Motion is granted, per the existing Scheduling Order, Bungie will have no opportunity to re-depose Martineau on critical topics relevant to the *Grimoire Anthology* or provide additional expert testimony on a new claim of copyright infringement. For example, a key portion of Bungie's October 29, 2025 deposition of Mr. Martineau focused on asking Martineau to identify the elements of his asserted work that he believed to be infringed in the accused "Red War" and "Curse of Osiris" campaigns. If the Motion is granted, Bungie will be deprived of the opportunity to similarly depose Martineau with regard to his claims against the *Grimoire Anthology*, or to serve him with written discovery to likewise probe his claims regarding the anthology volumes.

Similarly, on October 28, 2025, in accordance with the Scheduling Order, Bungie submitted its expert reports in this matter. Dkt. 16 at 3. Bungie's expert Mr. Jeff Rovin conducted a thorough *scenes-a-faire* analysis regarding the elements of Martineau's work that the FAC alleged to be infringed by the accused "Red War" and "Curse of Osiris" campaigns. That same day, Mr. Rovin also submitted a report rebutting the improper substantial similarity analysis conducted by Martineau's proffered expert, Ms. Sarah "Katie" Crowder. As Ms. Crowder's report focused on the accused "Red War" and "Curse of Osiris" campaigns, so too did Mr. Rovin's rebuttal report. Bungie's damages expert, Dr. Jeffery A. Stec, evaluated what damages would be owed to Martineau, should Martineau prevail on the issue of copyright infringement liability. Likewise, Dr. Stec's damages report was limited in scope to the accused "Red War" and "Curse of Osiris" campaigns. Naturally, neither of Bungie's experts analyzed the *Grimoire Anthology*, and the belated nature of the Motion robs Bungie of the opportunity for its experts to supplement their reports to do so, as Bungie's October 28, 2025 deadline to serve expert reports is long past.

Nevertheless, with no support, Martineau claims that Bungie "cannot credibly claim prejudice from this amendment" because "[t]he *Grimoire Anthology* consists entirely of Bungie's own publications [and] the relevant facts and circumstances regarding the *Grimoire Anthology* books are well within the knowledge of Bungie." Dkt. 48-1 at 6-7. But the proper standard for determining whether a defendant will suffer prejudice is *not* whether the defendant has knowledge of the facts underlying the claim, but whether the amendment "expand[s] the allegations beyond the scope of the initial complaint" and/or "would force Defendant to reconsider its own case strategies and theories and would undoubtedly result in additional motions, responses, and delay." *Parish*, 195 F.3d at 763; *Ruiz v. Univ. of Texas M.D. Anderson Cancer Ctr.*, 291 F.R.D. 170, 172 (S.D. Tex. 2013) ("As to the third factor, Plaintiff argues that Defendant will not suffer prejudice

13

because the . . . claim overlaps . . . However, an examination of the proposed second amended complaint reveals that, by amendment, Plaintiff seeks, for the first time, to assert multiple new case theories").

### iii.   Factor 4: Continuance Is Not Available to Cure Prejudice

This factor considers whether continuance can cure the prejudice resulting from the requested amendment. Martineau's Motion argues, without factual or legal support, that "the proposed amendment will not disrupt the existing discovery deadline or trial date." Dkt. 48-1 at 7. Nonetheless, on November 10, 2025, the very day discovery closed, Martineau moved for a thirty-day extension to the discovery deadline. *See* Dkt. 57. Martineau's request to extend the discovery period is an acknowledgment that his new claim would necessarily require additional discovery, expert testimony, summary judgment briefing, and late-game adjustment of case strategy. Moreover, the *Grimoire Anthology* is a set of entirely different literary works created distinctly from (and many years after) the accused "Red War" and "Curse of Osiris" *Destiny 2* video game campaigns and would be distinctly analyzed by the factfinder to assess substantial similarity, should Martineau be permitted to bring a copyright claim against each volume. In addition, each volume of the *Grimoire Anthology* has its own set of editors, art directors, designers, illustrators, and publishers, as well as its own distinct development process. Martineau's conclusory assumption that neither party would need additional discovery is belied by the very different nature of the works he now seeks to add, and by his own request to extend the discovery period.

Finally, a continuance cannot cure the prejudice that Bungie would suffer if the Motion were granted. Bungie would incur substantial time and expense to conduct the required discovery and adjust its case at this late stage of the litigation. *See Rios v. City of Conroe*, 674 F. App'x 366,

369 (5th Cir. 2016) ("[A]llowing the totally new claim would require additional discovery on that claim, adding substantial time and expense").  For example, Bungie would need to travel again to depose Martineau and his expert witness a second time, would need to pay additional expert fees so its experts could conduct new analyses and supplement their existing reports, and would need to send and potentially respond to new discovery requests.  The resulting significant increase in Bungie's defense costs could have been avoided had Martineau sought to amend his pleading by the Court-imposed deadline.  Indeed, it is the very purpose of the operative Scheduling Order to "limit the time for discovery and filing of dispositive motions to resolve this case," which has now been pending for over a year.  *Villarreal*, 2018 WL 6272046, at *5 ("Given the additional resources and expense that the proposed amendment would impose on the parties, a continuance cannot cure the prejudice that the amendment would cause.").  Because such a continuance would unnecessarily delay the trial, the Court should, in its discretion, deny the Motion.  *See S&W Enters.*, 315 F.3d at 536-37 (upholding denial of leave to amend where a continuance would unnecessarily delay trial, "in view of district judges' 'power to control their dockets by refusing to give ineffective litigants a second chance to develop their case.'").

### iv.    Factor 2: Importance Is Not Sufficient to Grant the Motion

The remaining factor looks at the importance of the amendment. S*&W Enters.*, 315 F.3d at 536. The Motion's intended amendment to add a claim against the *Grimoire Anthology* is only important to Martineau's case because he and his counsel have realized—*eight months past the deadline to move for leave to amend*—that the claim he brought over a year ago against the accused "Red War" and "Curse of Osiris" *Destiny 2* campaigns is flawed on the merits, as well as, time-barred.  *See, e.g.*, Duvdevani Decl. ¶ 6, Ex. A at 96:23-25 (Q: "So by August 23, 2021, when you sent this email, you believed that Bungie had infringed [your asserted work], correct?"  A: "Yes,

ma'am."). But an utter lack of diligence in bringing the first nonviable claim is not a reason to allow Martineau to again amend his operative pleading at this late stage and thereby prejudice Bungie. *See supra* at Sections II(b)(i)-(iii); *see also Villarreal*, 2018 WL 6272046, at *4 (denying motion for leave to amend even though the amendment was important to add a claim that would avoid a statute of limitations bar).

Moreover, any importance Martineau attaches to the Motion is undercut by his claim that he will not need an extension on discovery if allowed to amend. Dkt. 48-1 at 5-7. Martineau made this representation in the Motion, knowing that he nonetheless intended to move for a thirty-day extension of the discovery period on November 10, 2025, on the very close of discovery. Dkt. 57. If Martineau's belated motion for an extension is not granted, discovery and the window for depositions closed on this matter on November 10. Dkt. 16 at 9. If Martineau's motion for an extension *is* granted, it can be presumed from this Motion that Martineau does not intend to use that time to investigate his claims regarding the *Grimoire Anthology*, because Martineau expressly states that such discovery is unnecessary. *See* Dkt. 48-1 at 5-7; *see also* Dkt. 57 (not representing that the additional discovery time is needed in order to obtain discovery regarding the *Grimoire Anthology*).

In either scenario, the fact remains that the *Grimoire Anthology* are standalone literary publications, they are not the accused "Red War" and "Curse of Osiris" *Destiny 2* campaigns. If Martineau does not obtain an extension on discovery or does not use a granted extension to investigate the *Grimoire Anthology*, he will have no documents or testimony in the record to establish his separate infringement claim against the *Grimoire Anthology* or to establish any potential damages or recovery. Absent the evidence necessary to meet these burdens, the requested amendment would not allow Martineau to recover monetary relief different from that available for

his existing claims.  *N. Cypress Med. Ctr. Operating Co. v. Blue Cross Blue Shield of Tex.*, 2011 WL 582638, at *3 (S.D. Tex. Feb. 9, 2011) (denying motion to amend).

### v. Martineau's Representation of His Proposed Amendment is Inaccurate and Establishes No Good Cause Exists

As discussed in depth *infra* at Section II(c)(i), Martineau's Motion does not disclose several substantive edits in the Proposed SAC that do not relate at all to the *Grimoire Anthology*, as demonstrated by a redline comparison between the Proposed SAC and operative FAC.  *See* Duvdevani Decl. ¶ 8, Ex. C.  At least one court has found that a movant does not satisfy the good cause standard of Rule 16(b) where it is "reveal[ed] that [the movant's] representation is inaccurate."  *See Harris*, 2022 WL 4120620, at *4.  For example, in *Harris*, the court found that Rule 16(b)'s good cause burden was not met where the movant represented that its proposed edits were being made to comply with local law, but "a comparison of the operative Complaint…and the Proposed Amended Complaint…reveals that representation is inaccurate, as the Proposed Amended Complaint adds additional factual allegations not contained in [the movant's] original Complaint."  *See id.*  The Motion should be denied on this ground.  *Id.*

### c.  Even Under Rule 15 the Court Should Deny Martineau's Motion

As set forth *supra* in Section II(b), Martineau has failed to establish good cause to modify the scheduling order pursuant to Rule 16(b).  However, even if the Court does find good cause, it should nonetheless deny leave pursuant to Rule 15(a), in light of Martineau's bad faith, failure to previously cure deficiencies in pleadings, and the futility of his proposed amendment.  *S&W Enters.*, 315 F.3d at 536 ("Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave.").

### i. Martineau's Unduly Delayed Motion Is a Silent Attempt to Correct His Flawed Claims

As discussed *supra* at Section II(b)(i) Martineau's undue delay in discovering his purported claims against the *Grimoire Anthology* amounts to a lack of diligence.  However, his continued undue delay between his purported discovery of the anthology in "early October" and his filing of this Motion around four weeks later is indicative of bad faith.  Martineau's counsel waited until after Bungie incurred substantial expense to generate expert reports and to depose Martineau and his expert witness before seeking leave to amend.  Before Martineau filed this Motion, he received Bungie's expert reports on October 28, 2025, and both his record counsel attended his in-person deposition on October 29, 2025.  Dkt. 16 at 9; Duvdevani Decl. ¶ 6.  The reports and deposition testimony exposed serious weaknesses in Martineau's claims, with Martineau's deposition in particular revealing a dispositive deficiency in his claim as alleged, namely, Bungie's lack of access to Martineau's blog.  Martineau's Motion is a last-ditch attempt to amend his Complaint to address this issue.

Because unauthorized copying is necessary for copyright liability, defendant's prior access to the plaintiff's work is a key element of a copyright infringement claim.  *Armour v. Knowles*, 512 F.3d 147, 152-56 (5th Cir. 2007) (affirming district court's grant of summary judgment to defendant because plaintiff's three theories of access were impossible and the fourth was too speculative and not "reach[ing] the question of probative or substantial similarity").  Martineau's access allegations have been hotly contested in this litigation since the pleading stage.  *See* Dkt. 11-1 at 9-10; Dkt. 26-1 at 9-11.  Generally, without proof of access, Martineau would need to show "striking similarity" between his work and *Destiny 2*—a much higher bar than the "substantial similarity" test. *See, e.g.*, *Batiste v. Lewis*, 976 F.3d 493, 504-505 (5th Cir. 2020) (explaining the heightened requirements).  However, when a plaintiff affirmatively concedes that access is

impossible during the relevant time period, that alone disposes of infringement based on that theory of access. *See Armour*, 512 F.3d at 154-156 (rejecting at the threshold three of four potential access paths because an admission during discovery "ma[de] access impossible" for those paths and focusing the remaining analysis, including striking similarity, on the only theory that was "not blocked by" plaintiff's admission); *cf. Batiste*, 976 F.3d at 502 (noting that "a plaintiff may raise an inference of factual copying *without any proof of access* if the works are 'strikingly similar'") (emphasis added). Currently, Martineau's FAC alleges that *Destiny 2*'s writers and developers, desperate for creative ideas during a short game development window, searched for science fiction inspiration on the internet sometime during 2016 and 2017, and, *ipso facto*, accessed Martineau's blog posts during that time period, subsequently copying them. *See* Dkt. 24 ¶¶ 40-42, 46, 48-53, 65-57.

However, on October 29, 2025, Bungie took Martineau's deposition in New Orleans, and a significant portion of the deposition (attended by both of Martineau's record counsel) focused on whether Martineau had any evidence of Bungie accessing his asserted work during the sixteen-month access period alleged in his FAC. *See id.* ¶ 42; Duvdevani Decl. ¶ 6. During this deposition, Bungie's counsel elicited testimony from Martineau that foreclosed Martineau's allegations regarding Bungie's access of his work. Specifically, Martineau testified under oath, in direct contradiction with the allegations in his FAC, that his asserted blog posts were actually "delisted" and his blog privatized by December 2014. Duvdevani Decl. ¶ 6, Ex. A at 67:20-68:22. Martineau confirmed that, after he made his blog private in December 2014, no one at any time after that point could access or view its contents except for him, or someone using his computer. *Id.* at 71:3-15. This testimony established that Martineau's work was not accessible to "any external user" (including Bungie) from December 2014 to the current day and therefore rendered impossible his

existing allegations in the FAC that *Destiny 2* developers accessed his work at some point in 2016 or 2017.  *See id.*; *see also* Dkt. 24 ¶¶ 40-42, 46, 48-53, 65-57.

Immediately following Martineau's deposition, Martineau's record counsel orally informed Bungie's counsel that Martineau would seek leave to amend the FAC but did not inform Bungie what that amendment would entail.  Duvdevani Decl. ¶ 6.  That same evening, Bungie's counsel received an email from Martineau's counsel that asked whether Bungie would consent to Martineau's intended amendment, representing that "[t]he new allegations relate to infringement of Mr. Martineau's copyrighted works by Bungie's multi-volume publication 'The Grimoire Anthology.'" Duvdevani Decl. ¶ 7, Ex. B.  A redline of the Proposed SAC against the operative FAC was not shared with Bungie.  *See id.*  Bungie responded that, in light of the long-past deadline to move for leave to amend, the public availability of the *Grimoire Anthology* since the outset of the litigation, the approaching close of discovery, and Bungie's intention to move for summary judgement, it could not consent to this Motion.  *See id.*

However, upon the November 3, 2025 filing of his Motion, Bungie learned that Martineau had not been forthcoming about the nature of his intended amendment when he asked for Bungie's consent.  While the Motion exclusively claims that amendment is necessary to add the *Grimoire Anthology*, a redline of the Proposed SAC against the operative FAC tells a different story entirely:  Martineau's Proposed SAC contains substantive and material edits that are **entirely unrelated to the *Grimoire Anthology*** and are **not disclosed at all in the Motion**.  *See, e.g.*, Duvdevani Decl. ¶ 8, Ex. C ¶¶ 40, 49, 52, 54-56, 70.  Indeed, the redline reveals that Martineau's counsel omitted the nature of Martineau's proposed amendment to both Bungie (when seeking Bungie's consent) and to the Court (in the instant Motion).  The undisclosed edits are highly material to Martineau's claims and appear to be a calculated attempt to quietly remedy the serious and fatal defects in

Martineau's access allegations that Bungie diligently uncovered through months of discovery and deposition.  The Proposed SAC includes undisclosed new allegations that Martineau's blog could have instead been accessed by others at Bungie *before* development on *Destiny* 2 began, and *before* Martineau alleges Bungie's *Destiny 2* writers would have supposedly been desperately hunting for new ideas online:

> ~~51~~52.   Members  of  Bungie's  ~~Destiny  2~~ development  team  thus  had  the technical
>
> expertise and motivation to access Martineau's work via the well-known and publicly available WordPress online platform, whether during the development of Destiny 2 or earlier.

*See* Duvdevani Decl. ¶ 8, Ex. C at ¶ 52.  Even if he had been forthright in his Motion about these edits, Bungie is unaware of any good faith basis for Martineau to include this additional language in his pleading, especially given that discovery has established an *absence* of access given (1) Martineau's admission that his blog posts were down by 2014 (before *Destiny 2* development); (2) Martineau's testimony that his only theory of access was that his blog posts were on the internet; and (3) Bungie's evidence of independent creation; and (4) Bungie's expert report demonstrating that the purported similarities between the works are scenes-a-faire found in prior sci-fi works. *See Batiste v. Lewis*, 976 F.3d 493, 504 (5th 2020) ("Without proof of access, [a plaintiff] must show 'striking similarity' between the defendants' [works] and his.  To meet that burden, he must point to "'similarities ... that can only be explained by copying, rather than by coincidence, independent creation, or prior common source.'")  (internal citations omitted); *see also* Duvdevani Decl. ¶ 6, Ex. A at 79:1-13.  Similarly, the Proposed SAC omits the operative FAC's language limiting Martineau's access allegations to the *Destiny 2* development team that worked on the

game in 2016 and 2017, presumably so that Martineau may point the metaphorical finger at any developer who has ever worked at Bungie:

> ~~53~~54. One or more members of Bungie's ~~Destiny 2~~ development team(s) could ~~have~~ have easily accessed Martineau's work using the WordPress key-word search function.

*See id.* at ¶ 54.  As a final example of new allegations not discussed at all in the Motion, and in an attempt to refute Bungie's maintained relevancy objections to producing documents or information concerning unrelated, third-party infringement accusations against Bungie (a subject also at issue in Martineau's pending Motion to Compel (*see* Dkt. 56 at 14-15)), Martineau's Proposed SAC also silently includes a new allegation that:

> ~~48.   Bungie encourages its creative developers to look to outside sources for ideas and inspiration.~~
>
> 49.   Dating back to the development of Destiny 1, Bungie has openly stated that it encourages its creative developers to look to outside sources for ideas and inspiration. Indeed, Bungie has been accused by multiple third parties of unauthorized copying of content, and has even admitted such copying in certain instances.

*Id.* at ¶ 49.

Martineau's Motion fails to mention any of these edits, discussing only the *Grimoire Anthology*.  Nor did the Motion attach a redline of the Proposed SAC's changes to the operative FAC.  The omission of these changes in the Motion suggests gamesmanship.  Martineau's counsel understood that their client's truthful deposition testimony directly contradicted the FAC's existing access allegations, and they now appear to be trying to rescue the claim by including new

allegations without identifying these changes to the Court. The Court should therefore deny the Motion on these grounds alone, and Bungie reserves its right to potentially seek sanctions against Martineau and his counsel for this conduct. *See Cambridge Toxicology Group, Inc. v. Exnicios*, 2005 WL 8173877, at *4 (E.D. La. May 13, 2005) (ordering sanctions pursuant to 28 U.S.C. § 1927 where plaintiff counsel, *inter alia*, filed amended complaints in bad faith, as the amended complaints were unduly delayed and plaintiff counsel did not establish good cause); *SMH Enterprises, LLC v. Krispy Krunchy Foods, LLC*, 340 F.R.D. 554, 561 (E.D. La. Feb. 2, 2022) (defining bad faith generally as actions that "design to mislead or deceive another…or refusal to fulfill some duty…conscious doing of a wrong for dishonest or morally questionable motives" and bad faith amendments as "amendments that are abusive, designed to secure a tactical advantage, or include allegations that are specious and insufficient to state a claim.").

### ii. Martineau Failed to Cure Deficiencies in Previous Amendment

On March 10, 2025, the Court *sua sponte* granted Martineau leave to amend his original complaint by March 24, 2025. Dkt. 23. Martineau thus had two weeks to amend his complaint to accuse additional works, and, indeed, Martineau did so, expanding his allegations to include the "Curse of Osiris" campaign, in addition to the originally-accused "Red War" campaign. *See* Dkt. 24. As discussed *supra* at Section II(b)(i) all volumes of the *Grimoire Anthology* were publicly available by the time that Martineau filed his FAC. Martineau offers no reason why he could not have discovered the *Grimoire Anthology* during this period in which he was actively expanding his infringement claims and included it in his amended complaint. Similarly, Bungie's first motion to dismiss attacked Martineau's allegations of access (Dkt. 11 at 15-15) and Martineau's FAC expanded on his access theory. Because Martineau's Motion does not mention the edits to Martineau's access theory added to the Proposed SAC *at all*, the Motion likewise does not explain

why Martineau did not make these edits in his previous amendment, despite having actively updated his access theory in the FAC.

### iii. The Proposed Amendment Is Futile

Finally, the Court should deny the Motion on the grounds that amendment would be futile. To determine "futility," the Fifth Circuit applies "'the same standard of legal sufficiency as applie[d] under Rule 12(b)(6).'" *Gibson v. Ocean Shipholdings, Inc*., 2015 WL 4645663, at *3 (E.D. La. Aug. 4, 2015) (North, M.J.) (quoting *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872–73 (5th Cir. 2000)). To properly plead copyright infringement, a plaintiff must sufficiently identify an accused work. *Terraspan, LLC v. Rave*, *LLC*, 2012 WL 6115721, at *7 (N.D. Tex. 2012). For each accused work, a plaintiff also must allege specific acts of infringement. *Marshall v. McConnell*, 2006 WL 740081, at *4 (N.D. Tex. Mar. 23, 2006) (citing *Taylor v. IBM*, 54 F. App'x 794 (5th Cir. 2002)).

Here, Martineau's Proposed SAC seeks to broadly add a copyright infringement claim against the *Grimoire Anthology*. Dkt. 48-4 at Count II. But the *Grimoire Anthology* is a series of seven books that were published and sold individually between 2018 and 2025. Although Martineau's Proposed SAC claims to accuse "All Volumes" of the *Grimoire Anthology*, it identifies only two volumes specifically: *Volume I: Dark Mirror* and *Volume V: Legions Adrift. See* Dkt. 48-4 ¶¶ 139-140, 146-147, 193, 266. There are no allegations regarding the other five volumes in the *Grimoire Anthology*. Thus, with no time left in discovery, the Proposed SAC leaves Bungie in the dark about what specific content in the five other volumes is being accused of infringing Martineau's asserted work. *See Nat. Bus. Dev. Servs., Inc. v. Am. Credit Educ. & Consulting, Inc.*, 299 F. App'x 509, 512 (6th Cir. 2008) (holding a complaint cannot survive a Rule 12(b)(6) motion where plaintiff failed to even allege which materials were infringing).

Moreover, Martineau's threadbare accusations regarding the *Grimoire Anthology* are in serious tension with the Motion's representation that Martineau and his counsel "aggressively investigate[d]" the *Grimoire Anthology* upon learning of its existence (Dkt. 48-1 at 4)—an endeavor which ostensibly took them a full month before the filing of the Motion. Regardless, without sufficiently identifying the accused works and their purportedly infringing elements, Martineau's Proposed SAC has not adequately made a claim of copyright infringement. Therefore, the Motion should be denied on the grounds that the proposed amendment would be futile.[4]

## III.    Conclusion

For the reasons stated above, Martineau's untimely Motion for Leave to File a Second Supplemental and Amended Complaint should be denied.

Dated: November 11, 2025

Respectfully submitted,

*/s/ Tamar Y. Duvdevani*
**DLA PIPER LLP (US)**
Tamar Y. Duvdevani (*pro hac vice*)
Jared Greenfield (*pro hac vice*)
1251 Avenue of The Americas, 27th Fl.
New York, New York 10020
Telephone: 212-335-4500
tamar.duvdevani@us.dlapiper.com
jared.greenfield@us.dlapiper.com

IRWIN FRITCHIE URQUHART MOORE & DANIELS, LLC
Darleene Peters (#25638)
Connor W. Peth (#39499)
Irwin, Fritchie, Urquhart & Moore, LLC
400 Poydras Street, Suite 2700
New Orleans, Louisiana 70130
Telephone: 504-310-2100
dpeters@irwinllc.com
cpeth@irwinllc.com

---

[4] There are likely many other reasons why Martineau's proposed amendment is futile, including lack of substantial similarity, but Bungie cannot ascertain what other reasons for futility may exist given the vagueness of the proposed new claim.

*Counsel for Bungie, Inc.*